Filed 10/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LUNADA BIOMEDICAL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LAURA NUNEZ et al.,<br><br>    Defendants and Respondents. | B243205<br>Consolidated with B246602<br><br>(Los Angeles County<br>Super. Ct. No. BC476870) |

APPEAL from orders of the Superior Court of the County of Los Angeles, Charles F. Palmer, Judge. Affirmed and remanded.

The Hicks Law Group, James B. Hicks for Plaintiff and Appellant.

Milstein Adelman, Gillian L. Wade, Mayo L. Makarczyk, Sara D. Avila; Erich D. Schiefelbine for Defendants and Respondents.

**INTRODUCTION**

Attorneys for a consumer served on a company a notice required for damages under the Consumer Legal Remedies Act, Civil Code section 1750 et seq. (CLRA), setting forth alleged violations of the CLRA and demanding action. The company then brought a declaratory relief action against the consumer and her attorneys seeking a declaration that it had not violated the CLRA. The consumer and the attorneys moved to strike the complaint under Code of Civil Procedure section 425.16[1] (anti-SLAPP statute[2]), which motions the trial court granted. In affirming, we hold that the declaratory relief action is subject to the anti-SLAPP statute as it arose out of protected activity provided by that statute, and that the trial court properly granted the special motions to strike because the company's declaratory relief action had no probability of success. In this connection, we hold that under the reasoning of *Filarsky v. Superior Court* (2002) 28 Cal.4th 419 (*Filarsky*), a potential defendant in a CLRA damages action after receiving the statutory notice may not maintain a declaratory relief action to establish that there was no violation of the CLRA. We therefore affirm the order striking the complaint. We also affirm the award of attorney fees.

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated. We sometimes refer to a section 425.16 motion as an anti-SLAPP motion.

[2]    SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn.1.)

**FACTUAL AND PROCEDURAL BACKGROUND**

Laura Nunez (Nunez) retained two law firms, Newport Trial Group (Newport) and Wasserman, Comden, Casselman & Esensten, LPP (Wasserman),[3] to represent her in an anticipated consumer class action under the CLRA. Newport served Lunada Biomedical (plaintiff) with a one page notice and demand, pursuant to Civil Code section 1782 of the CLRA (CLRA Notice), via certified mail, return receipt requested, contending that plaintiff's dietary supplement, "Amberen," was being marketed falsely and misleadingly as a "natural remedy for Menopausal symptom relief," in violation of the CLRA. The CLRA Notice was served on behalf of an unnamed Californian individual and a class of similarly situated persons. It requested that plaintiff "irrevocably stop all false, misleading, and/or unsubstantiated advertising and labeling claims, and provide all consumers who have purchased Amberen with a full refund." Plaintiff's counsel responded by letter to the CLRA Notice, denying its contentions, and claiming in detail that scientific evidence supported plaintiff's advertising claims concerning Amberen.

Thereafter, plaintiff's counsel sent an e-mail to Wasserman confirming their telephone conversation that occurred a few days previously, stating that he disagreed with Wasserman's claims for the reasons set forth in plaintiff's earlier reply letter, and stating, "[A]s I mentioned, I almost always consider settlement issues before litigation, so I asked you to propose a settlement offer. . . . There's no rush, we can talk whenever you are ready." Later that afternoon, an attorney from Wasserman sent an e-mail to Plaintiff's counsel, stating, "Given the upcoming holidays, I have not had a chance to talk to all interested parties, much less put together a 'settlement offer.'" The e-mail also stated that Wasserman needed information regarding the sale of Amberen before it could propose a settlement demand, but that it would provide plaintiff's counsel with an outline of the

---

[3]     Newport and Wasserman are sometimes collectively referred to as the law firm defendants.

injunctive relief concerning "labeling and advertising changes" that "we" would demand as part of any settlement.

A little over a month later, the attorney from Wasserman sent an 11-page letter to plaintiff's counsel via e-mail and United States mail thanking him for responding to "our [CLRA Notice] on behalf of our client, . . . Nunez . . . regarding her potential class action claims related to Amberen . . . ." The letter stated, "In accordance with our November 18th telephone conversation and subsequent email communications, this letter will discuss possible ways to resolve the current dispute concerning our client's false and misleading advertising claims against [plaintiff]. I will not attempt to further address the merits of [Nunez's] claims in this letter. Instead, I will simply outline briefly potential settlement approaches and structures." It set forth possible "ALTERNATIVE SETTLEMENT STRUCTURES," and detailed matters subject to injunctive relief consisting of "PROPOSED ADVERTISING AND MARKETING MODIFICATIONS." The proposed advertising and marketing modifications were matters that, according to Wasserman, plaintiff should "permanently cease" from representing to current and potential purchasers of Amberen, "delete" from all Amberen advertising and labeling, and include in all future Amberen advertising and labeling.

Within two weeks, plaintiff filed a complaint alleging a single cause of action for declaratory relief against defendants. Plaintiff sought a determination regarding "the accuracy and legality" of plaintiff's advertising of Amberen. Plaintiff alleged in its complaint that "[t]his action is being filed because Defendants threaten to file a lawsuit claiming that Plaintiff's advertising violates California's consumer protection statutes, including . . . [the CLRA]. However, Defendants' threatened suit lacks any basis . . . ." Plaintiff alleged in the complaint that "[t]his dispute was originally raised in a [CLRA Notice] claiming that [plaintiff's] advertising for Amberen supposedly violated the CLRA . . . ." Plaintiff also referred to in the complaint various additional communications the parties had regarding settlement, including Wasserman's letter. Plaintiff also included in the complaint responses to the matters contained in Wasserman's letter.

4

Nunez and Newport filed an anti-SLAPP motion, in which Wasserman joined. The motions were made on the grounds that plaintiff's claim arose from protected activity—"defendants' CLRA [N]otice regarding plaintiff's deceptive advertising claims about its product Amberen, and related settlement communications"— and plaintiff could not establish a probability of prevailing on its claim.

Plaintiff opposed defendants' anti-SLAPP motions. In support of that opposition, plaintiff provided substantial evidence in support of its contention that its advertising of Amberen was not false and misleading. Specifically, plaintiff submitted declarations attaching plaintiff's counsel's letter setting forth scientific evidence that supported plaintiff's advertising claims concerning Amberen and declarations of a professor in biology from the Department of Life Sciences at Santa Monica College and of a deputy director and head of the Laboratory of the Institute of Theoretical and Experimental Biophysics of the Russian Academy of Science, both of which declarations asserted in detail that scientific evidence supported plaintiff's advertising claims concerning Amberen. Defendants objected to plaintiff's evidence.[4]

The trial court issued a tentative ruling granting the special motions to strike the complaint, finding that defendants met their burden that plaintiff's claim arose from protected activity; plaintiff could not establish a probability of prevailing on its declaratory relief claim because "defendants' notification letter" were absolutely privileged by the litigation privilege of Civil Code section 47; and "in the absence of the notification letter, plaintiff has no evidence that an 'actual controversy' exists between [it] and defendants . . . ." At the conclusion of the hearing on defendants' motions, the trial court adopted its tentative ruling as its final ruling.

Defendants filed motions to recover their attorney fees under section 425.16, subdivision (c). The trial court awarded $104,293.75 in attorney fees to Nunez and

---

**4** The trial court did not rule on defendants' objections. Defendants do not contend that we should consider their objections in this appeal or that plaintiff did not provide sufficient evidence in support of its contention as to the accuracy of its advertising of Amberen.

Newport, and $57,765.63 in attorney fees to Wasserman.  Plaintiff appeals from the orders granting the special motions to strike and awarding attorney fees, asserting that the anti-SLAPP statute did not apply to its declaratory relief claim and challenging the amount of the attorney fees award.

## DISCUSSION

### A.      Anti-SLAPP Motion

#### 1.      *Legal Principles*

##### a)      Anti-SLAPP Statute and Standard of Review

Section 425.16 provides that a cause of action arising from a defendant's conduct in furtherance of constitutionally protected rights of free speech or petitioning may be stricken unless the plaintiff has a probability of prevailing on the merits.  (§ 425.16, subd. (b)(1).)  In ruling on a special motion to strike under section 425.16, the trial court employs a two-prong analysis.  Initially, under the first prong, the trial court determines "'whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . .  If the court finds such a showing has been made, it then determines [under the second prong] whether the plaintiff has demonstrated a probability of prevailing on the claim.'  [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

To satisfy the second prong—the probability of prevailing—the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to support a favorable judgment if the evidence submitted by the plaintiff is accepted.  The trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant.  Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the

6

plaintiff's attempt to establish evidentiary support for the claim. [Citation.]' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], superseded by statute on other grounds as noted in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547 [59 Cal.Rptr.3d 109].)" (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1104-1105 (*Cole*).) The standard for determining the merits of a defendant's special motion to strike a complaint is similar to that for determining the merits of a defendant's motion for summary judgment. "Both seek to determine whether a prima facie case has been presented by [the] plaintiff in opposing the motions." (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 18; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 7:1008, p. 7(II)-57 ["The 'probability of prevailing' is tested by the same standard governing a motion for summary judgment, nonsuit, or directed verdict"].) If a plaintiff sets forth a prima facie case in opposition to such motions, the motions must be denied.

The anti-SLAPP statute is broadly construed. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121-1122; *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 60, fn. 3.) "'[A]n anti-SLAPP motion may lie against a complaint for declaratory relief [citation] . . . .' [Citation.]" (*Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892, 909; *Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 39-40 ["An anti-SLAPP motion lies against a complaint for declaratory relief, among other types of causes of action"]; see also Burke, Anti-SLAPP Litigation (The Rutter Group 2014 §2.17, p. 2-12.)

"We review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 663 [132 Cal.Rptr.3d 781].) We look at the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence '"only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30] (*Soukup*).) The

7

plaintiff's cause of action needs to have only "'minimal merit" [citation]' to survive an anti-SLAPP motion.  (*Id.* at p. 291.)"  (*Cole, supra*, 206 Cal.App.4th at p. 1105.)

### b)     CLRA

The CLRA's purposes "are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  (Civ. Code, § 1760.)  Civil Code section 1780, subdivision (a) of the CLRA states that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following:  [¶]  (1) Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000).  [¶]  (2)  An order enjoining the methods, acts, or practices.  [¶]  (3)  Restitution of property.  [¶]  (4)  Punitive damages.  [¶]  (5)  Any other relief that the court deems proper."  A "consumer" is defined in Civil Code section 1761, subdivision (d), part of the CLRA, as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section.  Reasonable attorney's fees may be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith."  (Civ. Code, § 1780, subd. (e).)  Civil Code section 1781 provides that the consumer may maintain a class action under the CLRA.

Civil Code section 1770, subdivision (a) of the CLRA, states, inter alia, that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:  [¶] . . . [¶]  (5)  Representing that goods or services have . . . characteristics, . . . uses, [or] benefits . . . which they do not have . . . .  [¶] . . . [¶]  (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

another.  [¶] . . . [¶]  (9)  Advertising goods or services with intent not to sell them as advertised."

Civil Code section 1782, subdivision (a) of the CLRA requires a notice and demand as a prerequisite for a legal action for damages.  That section provides, "Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:  [¶]  (1)  Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.  [¶]  (2)  Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.  [¶]  The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California."[5]  Damages are not awardable under the CLRA if the defendant proves its violation was not intentional and resulted from a bona fide error despite reasonable procedures to avoid such an error, and remedies the violating goods or services.  (Civ. Code, § 1784.)

Civil Code section 1752 of the CLRA provides, "The provisions of this title are not exclusive.  The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law."  The CLRA is "'''a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in  the sale or lease of goods or services to any consumer. . . .' [Citation.]'''  [Citation.]"  (*Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 869.)  Civil Code section 1751 of the CLRA provides, "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."

---

[5]  An action for injunctive relief under the CLRA may be commenced without providing the notice that is otherwise required under Civil Code section 1782, subdivision (a).  (Civ. Code, § 1782, subd. (d).)

9

## 2. *Analysis*

### a) Arising From Protected Activity Under the Anti-SLAPP Statute

Plaintiff contends that the trial court erred in granting defendants' special motions to strike its declaratory relief claim because it did not "arise from" a protected activity, the CLRA Notice and correspondence, but rather from a dispute as to whether plaintiff violated the CLRA. According to plaintiff, the CLRA Notice and correspondence were just evidence of the dispute. We disagree.

Plaintiff's declaratory relief action refers extensively to the CLRA Notice and Wasserman's letter. Section 425.16 defines an "act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" and includes statements or writings made in judicial proceedings or made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (b)(1); see *id.*, subd. (e).) Correspondence "made" 'in anticipation of litigation "contemplated in good faith and under serious consideration"'" can be a petitioning activity protected by the anti-SLAPP statute. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) Thus, statements, writings, and pleadings in connection with civil litigation or in contemplation of civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.)

The parties do not dispute that the CLRA Notice and Wasserman's letter are protected activities and therefore subject to an anti-SLAPP motion. Prelitigation letters demanding that a party cease from doing certain acts or be subject to a lawsuit based on that conduct are in preparation or anticipation of litigation and fall within the protection of section 425.16, subdivision (e)(2) as "written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body . . . ." (*Gotterba v. Travolta*, *supra*, 228 Cal.App.4th at pp. 38, 41.) For example, "[S]ervice of a three-day notice to quit . . . is [a] protected activity within the meaning of section

10

425.16 because service of the notice is legally required to file an unlawful detainer action." (*Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1245; see *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480.)

It is true that even when "a party's litigation-related activities constitute 'act[s] in furtherance of a person's right of petition or free speech,' it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.]'" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477; see *Copenbarger v. Morris Cerullo World Evangelism*, *supra*, 215 Cal.App.4th at p. 1245 ["'[t]he pivotal distinction' is 'whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely "preceded" or "triggered" the tenant's lawsuit, or whether it was instead the "basis" or "cause" of that suit'"].)

"In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity. [Citation.] . . . [¶] Where . . . a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 '"unless the protected conduct is 'merely incidental' to the unprotected conduct."' [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550-1551.)

Here, the correspondence clearly arose in connection with the litigation that was contemplated or under serious consideration. Indeed, the CLRA Notice was required under the CLRA before an action for damages could be filed and thus is part of the litigation process. But for the CLRA Notice and demand letters, there would be no dispute. In order to satisfy the first prong, the challenged action must arise from the

11

protected activity.  (*Equilon Enterprises, LLC v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at pp. 66-67.)  In construing the anti-SLAPP statute broadly, as we must do (*id*. at p. 60, fn. 3), we believe that the CLRA Notice and correspondence not only preceded and triggered the declaratory relief action, but they were also the basis of the cause of the action.  The declaratory relief action therefore arose out of those communications, which are protected activities.

In *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, the plaintiff commenced its declaratory relief action in response to a notice that the defendant had served on it pursuant to Proposition 65.  (*Id*. at pp. 266-267.)  In the defendant's Proposition 65 notice, she claimed that the plaintiff served french fries that contained naphthalene, which is known to cause cancer and reproductive toxicity.  (*Id*. at p. 266, fn. 2.)  In its opposition to the defendant's anti-SLAPP motion, the plaintiff claimed that "its lawsuit did not arise from the sending of the notices, but from 'the underlying issues raised in [the defendant's] letters—namely the rights and obligations of CKE regarding its French Fries and other Food Products under Proposition 65. . . .'" (*Id*. at p. 266.)

The court in *CKE Restaurants, Inc. v. Moore, supra,* 159 Cal.App.4th 262, rejected plaintiff's contention that the lawsuit did not arise from the sending of the Proposition 65 notice.  (*Id*. at pp. 267, 271.)  In upholding the trial court's order granting the defendant's anti-SLAPP motion, the court stated, "In its complaint, [the plaintiff] directly challenged the merits of the 60-day notice by referring to and quoting from the 60-day notice.  [The plaintiff] requested a judicial determination that its food products complied with Proposition 65.  Instead of using the 60-day period to avoid litigation, [the plaintiff] used it to commence litigation.  Moreover, [the plaintiff] threatened to sue [the defendants] unless they withdrew their notice.  [The plaintiff's] actions arose *entirely* from the filing of the Proposition 65 notice.  The trial court recognized this, stating, 'without the Notice, there would have been no actual, present controversy, and no controversy at all.'" (*Id*. at p. 271.)

Although here the record does not provide that plaintiff threatened to sue defendants unless they withdrew the CLRA Notice, plaintiff alleged in its complaint,

12

"This action is being filed because Defendants threaten to file a lawsuit claiming that Plaintiff's advertising violates California's consumer protection statutes, including . . . [the CLRA]." Plaintiff referred to the CLRA Notice in the complaint, alleging, "This dispute was originally raised in [CLRA Notice] claiming that plaintiff's advertising for Amberen supposedly violated the CLRA . . . ." In its complaint, plaintiff also referred to various additional communications the parties had regarding settlement, including Wasserman's letter, and in the complaint plaintiff responded specifically to numerous matters contained in Wasserman's letter. Therefore, the declaratory relief action arose from defendants' protected activities, without which there would have been no dispute.

In *Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, a member of a homeowners association criticized the association's management for its handling of maintenance issues, suggested that its board be recalled, and requested copies of its income and expense reports. (*Id.* at pp. 1112-1113.) The homeowners association filed an action for declaratory relief against the association member, seeking among other things, a determination that its allocation of funds was consistent with the association's governing documents. (*Id.* at pp. 1113-1114.)

In affirming the trial court's grant of the anti-SLAPP motion of the association member, the court held that the declaratory relief action arose from a protected activity, stating, "[T]he action in this case was filed after [the homeowners association's] counsel threatened to sue [the association member] if she continued to request the financial documents and refuse to sign the confidentiality agreement. [The association member] did refuse to sign the agreement, and continued to speak out against [the homeowners association]. In response, [the homeowners association] filed suit against her seeking declaratory relief and attorney fees. [¶] It is clear from the evidence that the action in this case arose from [the association member's] exercise of her right of free speech in criticizing and speaking out against the action of [the homeowners association's] board." (*Country Side Villas Homeowners Assn. v. Ivie*, *supra*, 193 Cal.App.4th at p. 1118.)

Here, similar to *Side Villas Homeowners Assn. v. Ivie*, *supra*, 193 Cal.App.4th 1110, defendants notified plaintiff that it was engaging in conduct that the defendants believed violated the CLRA. In response, plaintiff filed an action against the defendants for declaratory relief. Plaintiff's complaint requested attorney fees against defendants, and plaintiff alleged, "This action is being filed because Defendants threaten to file a lawsuit claiming that Plaintiff's advertising violates the [CLRA]."

Plaintiff relies on *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 in contending that its declaratory relief action did not arise from defendants' protected activities, but that case is distinguishable. There, owners of mobile home parks brought a declaratory relief action against the city in federal court seeking a judicial determination that the city's rent control ordinance constituted an unconstitutional taking. (*Id*. at pp. 71, 72.) In response, the city sued the park owners in state court, requesting a declaration the rent control ordinance was constitutional, valid, and enforceable. (*Id*. at p. 72.) The city "concede[d] that its purpose in filing the state court action was to gain a more favorable forum in which to litigate the constitutionality of its mobilehome park rent stabilization ordinance," and that "in filing the state court action it intended subsequently to seek to persuade the federal court to abstain from hearing [the mobile home park owners'] suit." (*Id*. at p. 73.)

The Supreme Court rejected the argument that the "filing of [the] state court action arose from [the mobile home park owners'] filing of their earlier federal action and, therefore, fell within the ambit of the anti-SLAPP statute." (*City of Cotati v. Cashman*, s*upra*, 29 Cal.4th at pp. 73, 76-80.) The Supreme Court explained that although "[i]t is indisputably true . . . [the c]ity's action was filed shortly after [the mobile home park owners] filed their claim in federal court," "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*Id*. at pp. 76-77.) Instead, because the "fundamental basis" for the city's request for relief was the "underlying controversy respecting [the rental control] ordinance," the city's lawsuit "therefore was not one arising from [the mobile home park owners'] federal suit" and "was not subject to a special motion to strike." (*Id*. at p. 80.)

14

Although plaintiff's declaratory relief action here filed after defendant's protected activities does not necessarily establish that the lawsuit arose out of the protected activities, that is not the only factor. As noted above, the complaint refers extensively to the protected activities. And, unlike in *City of Cotati v. Cashman, supra,* 29 Cal.4th 69, in which the protected activity amounted only to a prior lawsuit, the protected activities here included a CLRA Notice, without which there would be no controversy. (*CKE Restaurants, Inc. v. Moore*, *supra*, 159 Cal.App.4th at p. 271.) Unlike the state court declaratory relief complaint in *City of Cotati v. Cashman*, *supra*, 29 Cal.4th 69, the declaratory relief complaint arose from defendants' protected activities.

In *Gotterba v. Travolta*, *supra*, 228 Cal.App.4th 35, the court held, as plaintiff argues here, that a declaratory relief complaint did not arise out of the defendant's protected activities, but the protected activities were merely evidence of the parties' dispute. In that case, the defendants' counsel sent to the plaintiff a letter demanding that he stop making statements that were allegedly in breach of a confidentiality agreement. The letter stated that the statements subjected the plaintiff "to enormous liability and entitle[d] my client to seek tens of millions of dollars in compensatory and punitive damages," and that the plaintiff was to "proceed at [his] peril." (*Id*. at p. 38.) The plaintiff filed an action for declaratory relief, seeking a declaration that the confidentially agreement was unenforceable. The plaintiff alleged that "a judicial declaration is necessary so that he may determine his rights and duties under the agreement and because [the defendants] 'ha[d] repeatedly threatened legal action' against him 'based upon alleged violations and prospective violations of the purported "confidentiality agreement."''" (*Gotterba v. Travolta*, *supra*, 228 Cal.App.4th at p. 39.) The defendants filed an anti-SLAPP motion to strike the declaratory relief action, asserting that the plaintiff "''filed this action to prevent [the defendants] from exercising [their] right to send [prelitigation demand] letters and/or suing to enforce the terms of [a prior agreement].'" (*Id*. at pp. 39-40.)

In affirming the trial court's order denying the motion, the court stated, "Contrary to [the defendants'] position and arguments, [the plaintiff's] complaint is not based upon

15

[the defendants'] sabre-rattling demand letters. The complaint seeks declaratory relief regarding the validity of the asserted termination agreements and not the propriety of [the defendants'] demand letters. [¶] . . . [¶] The demand letters do not form the 'actual controversy upon which to base the claim for declaratory relief,' but are merely evidence that a controversy between the parties exists. [Citation.] That 'protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a [contract] dispute into a SLAPP suit.' [Citation.] [¶] The lawsuit also does not seek to curtail [the defendants'] right to send demand letters." (*Gotterba v. Travolta*, *supra*, 228 Cal.App.4th at pp. 41-42.)

Here, the protected activities include defendants sending of the CLRA Notice. It is not merely evidence of the dispute. The usual demand letters involving liability are not a prerequisite to filing a lawsuit seeking damages. By contrast, the CLRA Notice here was required to be sent by the consumer before the consumer could file a lawsuit for damages under the CLRA. Unlike a demand letter, therefore, the CLRA Notice was part of the litigation process. Indeed, without the CLRA Notice, "'there would have been no actual, present controversy, and no controversy at all.'" (*CKE Restaurants, Inc. v. Moore*, *supra*, 159 Cal.App.4th at p. 271.)

In *Copenbarger v. Morris Cerullo World Evangelism*, *supra*, 215 Cal.App.4th 1237, a sublessee of a real property lease filed a lawsuit for, inter alia, declaratory relief against the sublessor after the sublessor served on the sublessee a 30-day notice to cure certain maintenance and other related defaults under the related lease agreements, and a three-day notice required for an unlawful detainer action. (*Id*. at pp. 1241-1242, 1245.) The sublessee alleged that a controversy existed among the parties "'concerning their respective rights and duties arising under'" the lease agreements and a quitclaim deed, that it had no duty to repair the improvements to the property, that the 30-day notice and the three-day notice were premature and did not comply with the lease agreements, and that it was the owner of the improvements to the property. (*Id*. at p. 1242.) In reversing the trial court's order granting the sublessor's anti-SLAPP motion, the court held that, "while the three-day notice might have triggered the [declaratory relief] complaint, the

16

evidence in the record demonstrates the complaint was based on an underlying dispute over [sublessee's] repair and maintenance obligations under the sublease and other unprotected activities." (*Id*. at p. 1240.)  In reaching its conclusion, the court emphasized that, """[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.""" [Citation.]" (*Id*. at p. 1245.)  The court concluded that the 30-day notice and the sublessee's letter in response constituted evidence that there was a dispute between the parties.  (*Id*. at p. 1245.)

  *Copenbarger v. Morris Cerullo World Evangelism*, *supra*, 215 Cal.App.4th 1237 is distinguishable.  In that case, presumably the dispute between the parties arose before the 30-day notice.  Here, the CLRA Notice created the disputes between the parties.  Also, unlike in that case, plaintiff here specifically alleged in the declaratory relief action that it was "being filed because Defendants threatened to file a lawsuit claiming that Plaintiff's advertising violates California's consumer protection statutes, including . . . [the CLRA]."  And, as noted above, the complaint extensively refers to the protected activities—the CLRA Notice and related correspondence.  Thus, the declaratory relief action *arose from* the protected activities.[6]

---

[6]  Other cases similar to *Copenbarger v. Morris Cerullo World Evangelism*, *supra*, 215 Cal.App.4th 1237 cited in that case are distinguishable for the same reasons.  (See *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97; *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154 (*Marlin*).)  For example, in *Marlin*, landlords filed a notice under the Ellis Act (Gov. Code, § 7060 et seq.) of their intentions to remove permanently apartments from the rental market and served tenants with a notice to vacate their units.  (*Id*. at p. 157.)  The tenants brought a declaratory relief action seeking a declaration of rights under the Ellis Act.  (*Ibid*.)  The Court of Appeal held that the action was not subject to the anti-SLAPP statute because the cause of tenants' action was the landlords' wrongful reliance on the Ellis Act to terminate their tenancy.  (*Id*. at pp. 161-162.)  Terminating a tenancy is not a protected activity.  (*Id*. at p. 161.)  There, the declaratory relief action concerned a dispute as to the applicability of the Ellis Act.  Here, plaintiff brought the action because defendants' threatened to sue it.  The claims and demands were protected activities—not an act such as terminating a tenancy.

As to the law firm defendants, the conclusion that the declaratory relief action arose from defendants' protected activities is even more compelling than it is for Nunez. An attorney has standing to bring a special motion to strike a cause of action arising from petitioning activity undertaken on behalf of the attorney's client. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Neville v. Chudacoff, supra,* 160 Cal.App.4th at p. 1262, fn. 6.) The declaratory relief complaint here alleged that a dispute existed because defendants wrongfully asserted that plaintiff's advertising was in violation of the CLRA. Because the law firm defendants are not consumers under the CLRA, they are unable to sue under the CLRA. There is, therefore, no actual controversy between them and plaintiff concerning any alleged violations of the CLRA. Any argument by plaintiff that the CLRA Notice and Wasserman's letter would be evidence that a controversy exists between it and the law firm defendants is unavailing.

          b)      Probability of Plaintiff Prevailing on the Declaratory Relief Claim

Plaintiff contends that it demonstrated a probability of prevailing on its declaratory relief claim. We disagree.

"To demonstrate a probability of prevailing on the merits, the plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support a judgment in the plaintiff's favor. [Citations.] The plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.]." (*Hall v. Time Warner, Inc*. (2007) 153 Cal.App.4th 1337, 1346; see *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719-720, fn. 5; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.)

As noted, "'[A]n anti-SLAPP motion may lie against a complaint for declaratory relief [citation] . . . .' [Citation.] Moreover, 'the mere existence of a controversy is insufficient to overcome an anti-SLAPP motion against a claim for declaratory relief. [¶] To defeat an anti-SLAPP motion, the plaintiff must also make a prima facie evidentiary showing to sustain a judgment in the plaintiff's favor. [Citation.] In other words, for a

18

declaratory relief action to survive an anti-SLAPP motion, the plaintiff must introduce substantial evidence that would support a judgment of relief made in the plaintiff's favor.' [Citations.]"**7** (*Mission Springs Water Dist. v. Verjil, supra,* 218 Cal.App.4th at p. 909.)

Defendants contend, and the trial court found, that the litigation privilege precludes plaintiff's claim for declaratory relief. That privilege does not.

The litigation privilege is set forth in Civil Code section 47, subdivision (b), which section provides, in pertinent part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, . . . ." The litigation privilege applies "'to bar tort actions *based on* privileged communications, excepting only the tort of malicious prosecution.' [Citation.]" (*McClintock v. West* (2013) 219 Cal.App.4th 540, 554, italics added; see *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 358, 360.) "[T]he litigation privilege shields a [person] from liability *based on*" the communication. (*Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418, 424, citing *Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753, italics added.) Plaintiff's complaint for declaratory relief does not seek to hold defendants liable for a tort based on the CLRA Notice or any other pre-lawsuit communication. Plaintiff instead seeks a declaration regarding "the accuracy and legality" of plaintiff's advertising of Amberen. Thus, the litigation privilege does not apply.

We can decide a matter on grounds different than that invoked by the trial court. "A reviewing court will uphold a judgment if it is correct for any reason "'regardless of the correctness of [its] grounds . . . ." [Citation.] "It is judicial action and not judicial reasoning which is the subject of review . . . ."' [Citation.]" (*People ex rel. Gallo v.*

---

**7** On appeal, defendants do not dispute that in opposition to the motion, plaintiff provided substantial evidence in support of plaintiff's contention that its advertising of Amberen was not false and misleading.

*Acuna* (1997) 14 Cal.4th 1090, 1119, fn. 4.) Plaintiff cannot demonstrate a probability of prevailing on its declaratory relief claim because it may not sue for declaratory relief regarding a claim for damages under the CLRA.

### 1) Cases

Defendants rely on *Filarsky*, *supra*, 28 Cal.4th 419, in which a city, after refusing to disclose to a requesting citizen certain documents under the California Public Records Act (Gov. Code, § 6250 et seq.), sought declaratory relief as to the propriety of its refusal. (*Filarsky*, *supra*, 28 Cal.4th at pp. 423-424.) In directing the Court of Appeal to issue a writ of mandate compelling the trial court to vacate its order granting declaratory relief and to enter an order sustaining the citizen's demurrer to the complaint, the Supreme Court stated, "[T]here are at least four important distinctions between proceedings arising under the [California Public Records] Act and ordinary declaratory relief actions. First, under the [California Public Records] Act, only a person seeking disclosure—not the public agency in possession of the records—may seek a judicial declaration regarding the agency's obligation to disclose a document. In an ordinary declaratory relief action, however, either party to a controversy may initiate the action. Second, in a proceeding under the [California Public Records] Act, the court must schedule the filing of responsive pleadings and hearings in order to reach a decision as soon as possible. Such a requirement is not imposed upon courts in an ordinary declaratory relief action. Third, if a person initiates a proceeding under the [California Public Records] Act, he or she must be awarded attorney fees and costs if he or she prevails, and the defendant public agency cannot recover fees or costs unless the proceeding is frivolous. In contrast, in a declaratory relief action, a member of the public seeking disclosure cannot recover attorney fees if he or she prevails, and a prevailing public agency may recover costs even if the individual's request for disclosure is not frivolous. Fourth, appellate review of the superior court's ruling in a proceeding under the [California Public Records] Act must be by a petition for writ of mandate filed no more than 40 days after notice of the ruling. On the other hand, a public agency may

appeal from a declaratory judgment requiring disclosure of the records, thus delaying disclosure for a significant period of time.  [¶]  These distinctions establish that permitting a public agency to file a preemptive declaratory relief action to determine its obligation to disclose records to a member of the public would eliminate important incentives and protections for individuals requesting public records.  Members of the public could be discouraged from requesting records, because a simple request for disclosure and a denial by the public agency could require the individual to defend a civil action in which he or she would be liable for costs if the agency prevailed, and in which the individual would not recoup attorney fees if he or she succeeded." (*Id*. at pp. 428-429.)

Plaintiff cites *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333 (*Baxter*), which concerned the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) (Health and Saf. Code, §§ 25249.5 through 25249.13).  In that case, the plaintiff manufactured medical devices that contained a chemical compound that caused liver cancer in rats and mice and was on "Proposition 65's list of chemicals known to the state to cause cancer or reproductive toxicity." (*Baxter*, *supra*, 120 Cal.App.4th at pp. 347-348.)  The Office of Environmental Health Hazard Assessment (OEHHA), the lead agency charged with implementing Proposition 65, denied the plaintiff's administrative petition for a declaration that the plaintiff did not have to provide the consumers with warnings under Proposition 65 regarding its medical devices.  (*Id*. at p. 348.) The plaintiff filed a complaint against the OEHHA stating a single cause of action for declaratory relief, in which complaint the plaintiff sought a determination that the chemical compound posed no significant risk of cancer to humans, and therefore no cancer warning was required under Proposition 65.  (*Id*. at pp. 348-350.)  The trial court granted declaratory relief in the plaintiff's favor.  (*Id*. at pp. 350-351.)

In affirming the judgment, the court in *Baxter*, *supra*, 120 Cal.App.4th at page 359 held that "OEHHA has failed to establish that Proposition 65 does not allow a business to bring a declaratory relief action under Code of Civil Procedure section 1060 for the purpose of determining whether the business is exempted from the warning requirement

of Proposition 65." The court reasoned that the provisions of Proposition 65 do not share the characteristics of the provisions of the California Public Records Act involved in *Filarsky*, *supra*, 28 Cal.4th 419, in which the court found to be persuasive indicators of a legislative intent to exclude declaratory relief actions under section 1060. (*Baxter*, *supra*, 120 Cal.App.4th at p. 357.) The court in *Baxter* stated that, unlike the California Public Records Act, Proposition 65 did not contain specific statutory mechanisms for seeking declaratory relief, nor did it have any "procedural protections"[8] for the public that would be circumvented if persons were permitted to seek preemptive declaratory relief under section 1060. (*Ibid*.) The court also stated that "the only way for a business to obtain a binding preenforcement determination" regarding Proposition 65 was pursuant to a declaratory relief judgment from the superior court. (*Id*. at p. 359.) The court held that the OEHHA failed adequately to support its contention that a preemptive declaratory relief would "'eliminate many of the incentives and protections in Proposition 65's enforcement provision and would thwart its purposes . . . .'" (*Id*. at p. 357.)

The court in *Baxter*, *supra*, 120 Cal.App.4th at page 359 also held that there was an actual controversy between OEHHA and the plaintiff and, therefore, the trial court did not abuse its discretion in granting declaratory relief. An irreconcilable controversy existed between OEHHA and the plaintiff over the OEHHA placing the chemical compound contained in the medical devices on Proposition 65's list of chemicals that cause cancer or reproductive toxicity. (*Id*. at p. 362.) Because of that irreconcilable difference, the plaintiff "was compelled either to provide a stigmatizing warning regarding its products even though it could show [the chemical compound in its product] does not cause cancer in humans, or risk being subjected to an enforcement action and costly civil penalty if its . . . theory is rejected in an enforcement action. [¶] Declaratory relief was necessary and proper to prevent [the plaintiff] from having to make this

---

[8] The court did not identify the "procedural protections" of the California Public Records Act to which is it was referring, and the court in *Filarsky*, *supra*, 28 Cal.4th 419 did not use that phrase.

Hobson's choice [citation] and to enable [the plaintiff] to obtain a declaration of its rights and obligations under the Act." (*Ibid.*)

Plaintiff also relies on *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728 (*American Meat*), in which the defendant sent required notices under Proposition 65 to, inter alia, eight different meat processors and retailers. (*Id.* at pp. 738-739.) The notices stated that the meat processors and retailers were selling either ground beef or liver products that contained chemicals identified by the state as being carcinogens and reproductive toxins, without supplying the warnings required by Proposition 65. (*Ibid.*) The eight alleged violators were represented by trade associations. (*Id.* at p. 738.) The trade associations filed a declaratory relief action against the defendant seeking declaratory relief on behalf of all of the trade associations' members that "as applied to meat and meat products," the warning requirement of Proposition 65 was preempted by the Federal Meat Inspection Act (21 U.S.C. § 601 et seq.). (*Id.* at p. 739.)

The trial court overruled the defendant's demurrer on the ground that "sufficient facts [had] been pled to establish an actual controversy." (*American Meat*, *supra*, 180 Cal.App.4th at pp. 735, 746.) Subsequently, the trial court granted summary judgment in favor of the trade associations, concluding that under the circumstances, the Federal Meat Inspection Act preempted the warning requirements of Proposition 65. (*Id.* at p. 740.)

In affirming the trial court's orders, the court in *American Meat*, *supra*, 180 Cal.App.4th at page 742 stated that "the Notices gave rise to an actual controversy between [the defendant] and the Trade Associations' members." (Fn. omitted.) The court stated that because Proposition 65 provided daily penalties, "it was clearly in the interest of the Trade Associations to take action as soon as possible to determine what, if any, obligations were imposed on their members by Proposition 65." (*Ibid.*)

The court in *American Meat*, *supra*, 180 Cal.App.4th at pages 741 through 742 also stated, "One purpose of declaratory relief is ""to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation."" [Citation.] ""One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to

23

preserve his legal rights.'"" [Citation.]" Because there was no enforcement action under Proposition 65, the court stated, "[T]he Trade Associations' members [were] in need of a ruling to guide their future conduct and enable them to avoid serious financial consequences . . . ." (*Id*. at p. 744.)

### 2) Analysis of Cases

There are various aspects of *Filarsky*, *supra*, 28 Cal.4th 419, *Baxter*, *supra*, 120 Cal.App.4th 333, and *American Meat*, *supra*, 180 Cal.App.4th 728, that both support and undermine the conclusion that a declaratory relief action may not be maintained by a potential defendant in a CLRA damages action to establish that there was no violation of the CLRA. For example, *Filarsky*, *supra*, 28 Cal.4th 419, in which the Supreme Court directed the Court of Appeal to issue a writ of mandate compelling the trial court to enter an order sustaining the citizen's demurrer to the declaratory relief complaint, concerned the California Public Records Act. The CLRA, the statutory scheme involved here, provides for award of attorney fees and costs if the complaining party prevails (Civ. Code, § 1780, subd. (e)),[9] a provision similar to that provided in the California Public Records Act. And as the California Public Records Act, the CLRA has a provision to expedite lawsuits brought under its provisions. Under Civil Code section 1781, subdivision (c), the consumer who brings the lawsuit as a class action, as plaintiff has done here, can on 10 days' notice request the trial court to hold a hearing to determine, among other things, whether "[t]he action is without merit or there is a defense to the action." On the other hand, unlike the California Public Records Act, which provides that trial court's ruling is subject to expedited appellate review, and therefore a direct claim under that statutory scheme would be undermined by the filing of a declaratory

---

[9]    Indeed, a consumer cannot waive any provision within the CLRA (Civ. Code, § 1751), and that waiver restriction presumably includes attorney fees. By contrast, "in an ordinary declaratory relief action, the prevailing party *is* entitled to court costs [citations], but the prevailing party is *not* entitled to attorney fees in the absence of a contractual provision so providing [citation]." (*Filarsky, supra,* 28 Cal.4th 419, 428.)

24

relief action, appellate review of a judgment entered pursuant to the CLRA is not reviewed on an expedited basis; it is reviewed on appeal.

*American Meat*, *supra*, 180 Cal.App.4th 728, and *Baxter*, *supra*, 120 Cal.App.4th 333, both concerned Proposition 65. In *American Meat*, the court affirmed the trial court's order overruling the defendant's demurrer to the declaratory relief complaint. (*American Meat*, *supra*, 180 Cal.App.4th at p. 735.) In *Baxter*, the court affirmed the judgment following the trial court's order granting declaratory relief in the plaintiff's favor. (*Baxter*, *supra*, 120 Cal.App.4th at pp. 350-351.)

As in Proposition 65, in which the statutory scheme provides for daily penalties that can be imposed on a person who violates Proposition 65, so too would a party expose itself to greater or additional damages claims for violating the CLRA the longer the matter is unresolved. Similar to the plaintiff in *Baxter*, *supra*, 120 Cal.App.4th 333, plaintiff here was subject to a Hobson's choice; absent the filing of a declaratory relief action, plaintiff either had to revise its advertising despite believing that it was supported by scientific evidence, or wait to be sued by defendants or other consumers. On the other hand, there is a mandatory attorney fees provision in the CLRA (Civ. Code, § 1780, subd. (e)); there is not a similar provision in Proposition 65.

The court in *Filarsky*, *supra*, 28 Cal.4th 419 emphasized that circumventing a person's mandatory right under a statute to recover attorney fees if he or she prevails in an action under that statutory scheme is an important consideration in determining if a declaratory relief action undermines the statue. (*Id*. at p. 429.) Plaintiff's declaratory relief action here eliminates an important incentive afforded by the CLRA, mandatory attorneys fees, and would thwart the CLRA's purpose. As noted above, the purposes of the CLRA "are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.) Also, a critical procedure under the CLRA is the notice provision that allows the prospective defendant to remedy any violations of the statute in order to avoid a lawsuit seeking damages. (Civ. Code, § 1782.)

As noted above, the CLRA, like the California Public Records Act, has a provision to expedite lawsuits brought under its provisions.  Moreover, only a consumer may maintain an action under the CLRA.  In addition, the declaratory relief action is against one consumer—Nunez—thereby eliminating the class action rights of the consumers who would have been joined in the CLRA class action.  Also, under Civil Code section 1784 of the CLRA, it is a defense to a claim for damages if the violation of the CLRA was not intentional, but a declaratory relief action would not address or resolve that issue.  Under the CLRA, injunctive relief may be awarded (Civ. Code, § 1781), but injunctive relief is not available in a declaratory relief action under section 1060.  It is true that a cross-complaint can invoke these remedies.  But then, there is no reason for declaratory relief.  Once a cross-complaint for damages under the CLRA is filed, the declaratory relief action would be rendered unnecessary because the cross-complaint presumably would include the issue of whether the plaintiff (i.e., the cross-defendant) was violating the CLRA.

It is inequitable for a consumer to be forced to defend a declaratory relief action, divorced of the incentives and rights under the CLRA, merely because the consumer sent a CLRA notice, and regardless of whether that consumer decided ultimately to file a lawsuit under the CLRA.  Indeed, the consumer may review responses to the CLRA Notice and decide not to bring an action.  A preemptive request for a declaration of rights would compel the parties to litigate the matter.  Thus, consumers would be deterred from making claims under the CLRA.

The test set forth in *Filarsky*, *supra*, 28 Cal.4th 419 is whether the declaratory relief action undermines the statute in question.  In view of the factors to which we point, we believe it does in this case.  Because, as a matter of law, plaintiff was precluded from filing a declaratory relief claim, it cannot demonstrate a probability of prevailing on that claim.

As to the law firm defendants, plaintiff cannot establish that it had a probability of prevailing on its declaratory relief claim against them because there is no actual controversy between them and plaintiff.  "'The fundamental basis of declaratory relief is

26

the existence of an *actual, present controversy* over a proper subject.' [Citation.]" (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 79.) Section 1060 states that "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties . . . ."

Plaintiff's declaratory relief action is based on Nunez's claim that plaintiff's advertising for Amberen violated the CLRA and caused her damages. Civil Code section 1780, however, provides that only consumers who have suffered damage may bring an action under the CLRA. As noted above, Civil Code section 1780, subdivision (a), states that, "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: [¶] (1) Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000). [¶] (2) An order enjoining the methods, acts, or practices. [¶] (3) Restitution of property. [¶] (4) Punitive damages. [¶] (5) Any other relief that the court deems proper." A "consumer" is defined in Civil Code section 1761, subdivision (d), part of the CLRA, as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."

The law firm defendants represented Nunez with respect to her claim and provided plaintiff with several prelawsuit communications regarding Nunez's claim. Regardless of whether they were the "driving force" behind the CLRA claims, as plaintiff contends, they are not consumers. Thus, there is no actual controversy between plaintiff and the law firm defendants. Accordingly, plaintiff cannot prevail on its claims against the law firm defendants.

## B. Attorney Fees

Plaintiff contends that the trial court erred because it awarded defendants excessive attorney fees on their anti-SLAPP motions. It contended before the trial court

that the attorney fees requested were unreasonably inflated and that the time records were inadequate.

Section 425.16, subdivision (c) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." "The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.)

A trial court, in assessing attorney fees, "begins with a touchstone or lodestar figure . . . . We expressly approved the use of prevailing hourly rates as a basis for the lodestar, noting that anchoring the calculation of attorney fees to the lodestar adjustment method '"is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts."' [Citation.] [¶] [The lodestar] may be adjusted by the court . . . ." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1131-1132.)

Defendants had the burden of establishing their entitlement to attorney fees in connection with their anti-SLAPP motions, including the reasonable amount of those fees. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.) "'[T]he court may require [a] defendant[] to produce records sufficient to provide "'a proper basis for determining how much time was spent on particular claims.'" [Citation.] The court also may properly reduce compensation on account of any failure to maintain appropriate time records. [Citation.]' [Citation.] The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended. [Citation]." (*Ibid*.) An attorney fee award must be based on a "'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the

28

case.'"  (*Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1131-1132.)  "We review the amount of attorney fees awarded for abuse of discretion.  [Citation.]  A trial court's attorney fee award will not be set aside 'absent a showing that it is manifestly excessive in the circumstances.'  [Citation.]"  (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)

Plaintiff relies on *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 371-372 and *Nazemi v. Tseng* (1992) 5 Cal.App.4th 1633, 1637-1641 (both of which cases were superseded by statute on other grounds as stated in *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 119) in support of its contention that "a lack of evidence [to support a fee award] is a legal defect subject to de novo review."  These cases do not support plaintiff's contention.  In *Nazemi v. Tseng*, *supra*, 5 Cal.App.4th 1633, the court reversed the trial court's award of attorney fees because the trial court "abused its . . . discretion" by considering defendant's untimely motion for attorney fees.  (*Id*. at pp. 1640-1641.)  In *Bankes v. Lucas*, *supra*, 9 Cal.App.4th 365, the court reversed the trial court's award of attorney fees to property owners as prevailing parties because they were not the prevailing parties and, citing *Nazemi v. Tseng*, *supra*, 5 Cal.App.4th 1633, their motion for attorney fees was untimely.  (*Id*. at pp. 369-371.)

The trial court awarded $104,293.75 in attorney fees to Nunez and Newport, and $57,765.63 in attorney fees to Wasserman, for a total award of $162,050.38.  In arriving at the award of attorney fees, the trial court applied a "multiplier of 1.25" to "reflect the contingent nature of the fees."

Plaintiff contends that defendants submitted "block billing" of their attorney fees that did not amount to careful compilations of the time spent.  The evidence submitted in support of the motions for attorney fees, however, was sufficient to allow the trial court to determine "whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended."  (*Christian Research Institute v. Alnor, supra,* 165 Cal.App.4th at p. 1320.)

Plaintiff similarly contends that defendants failed to meet their burden of proof to document the hours expended because they submitted declarations of counsel as to the

29

time they spent of various tasks and "did not even supply time records to [support] their . . . after-the-fact time estimates." A defendant, however, can carry its burden of establishing its entitlement to attorney fees by submitting a declaration from counsel instead of billing records or invoices. (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 785.)

Plaintiff contends that the amount awarded to defendants for attorney fees— $104,293.75 to Nunez and Newport, and $57,765.63 to Wasserman—was excessive.[10] "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court forfeits the claim on appeal." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.) The trial court was familiar with the issues in this case. Because plaintiff did not to point to the specific items challenged, with a sufficient argument and citations to the evidence, in support of its contention that the amount of awarded attorney fees was excessive, plaintiff forfeited this claim on appeal. (*Ibid.*)

Plaintiff contends that the attorney fee award should be reduced to $15,000, apparently in reliance on the reduction of the attorney fee awards in other cases. However, "each fee application under section 425.16, subdivision (c) must be assessed on its own merits . . . taking into account what is reasonable under the circumstances. [Citation.]" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*, *supra*, 163 Cal.App.4th at p. 561.) Because each attorney fee application stands on its own, we cannot reduce the attorney fee award to $15,000 based on the awards made in other cases.

Plaintiff argues that the multiplier of 1.25 was erroneous because "the requested amount was already enormous, and . . . [the] requested fees were excessive." But this

---

[10] Plaintiff does not contend that the trial court erred in approving and applying the hourly rates charged by defendants' attorneys.

contention has nothing to do with the multiplier. Among the factors that may be considered by the trial court in adjusting the lodestar are the contingent nature of the fee award, the novelty and difficulty of the questions involved, and the skill displayed in presenting them. (*Ketchum v. Moses, supra,* 24 Cal.4th at pp. 1131-1132; *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Excessive underlying attorney fees are not included among the factors listed in *Ketchum* and *Serrano* that may be considered by the trial court in awarding a multiplier.

Plaintiff did not raise before the trial court that any specific items did not relate to the anti-SLAPP motions. (See *Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at p. 1320.) Thus plaintiff has forfeited any such contention. Moreover, we cannot ascertain from the record if any such items were included in the fee award.

Because defendants prevailed on this appeal, they are entitled to recover their appellate attorney fees. "A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise. [Citations.] Under section 425.16, subdivision (c), a prevailing defendant on a special motion to strike a SLAPP suit 'shall be entitled to recover his or her attorney's fees and costs.' The statute does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent; hence they are recoverable." (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499-1500; *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 138-139.) On remand, the trial court shall determine the reasonable amount of fees to be awarded for attorney services rendered on the appeal.

## DISPOSITION

The orders granting defendants' anti-SLAPP motions and awards of attorney fees are affirmed.  As the prevailing parties on the special motions to strike, defendants are entitled to recover from plaintiff the reasonable amount of attorney fees and costs incurred on appeal pursuant to section 425.16, subdivision (c)(1).  We remand the matter to the trial court to determine the reasonable amount of such attorney fees and costs.

**CERTIFIED FOR PUBLICATION**

MOSK, J.

We concur:

TURNER, P. J.

GOODMAN, J.[*]

_____

[*]    Judge of Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.