Filed 5/28/15  Phelps v. Bishop CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WILLIE PHELPS,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>REGGIE LYN BISHOP, SR.,<br><br>　　Defendant and Appellant. | B252583 and B254891<br><br>(Los Angeles County<br>　Super. Ct. No. BC478175) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Reggie L. Bishop, in pro. per., for Defendant and Appellant.

Campbell & Farahani, Frances M. Campbell and Nima Farahani for Plaintiff and Respondent.

Plaintiff and respondent Willie Phelps sued her former landlord, appellant Reggie Lyn Bishop, Sr., for constructive eviction by turning off the water and gas to her apartment and for a violation of Civil Code section 789.3.[1]  A jury awarded respondent damages in the amount of $154,500, and the trial court awarded respondent $106,924 in attorney fees and entered judgment in her favor. Appellant, in propria persona, appeals the jury verdict in appeal No. B252583 and the award of attorney fees in appeal No. B254891.[2]  We affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Respondent lived in a rent-controlled apartment on Stocker Street in the City of Los Angeles from 1997 through 2011.[4]  Respondent testified that she had a good relationship with her previous landlord, but after appellant became the landlord in 2009, he began to harass her in what she believed was an attempt to force her to move out.  For example, in April 2011, appellant demanded that respondent complete a new rental application on the basis that she had exceeded the allowable number of occupants in the apartment, even though the previous landlord had

---

[1]    All unspecified statutory references are to the Civil Code.  Section 789.3 prohibits a landlord from willfully causing, directly or indirectly, the interruption or termination of any utilities to a tenant with the intent to terminate the tenant's occupancy.  (§ 789.3, subd. (a).)

[2]    The appeals were consolidated for the purposes of oral argument and decision.

[3]    The record contains no reporter's transcript.  However, the court approved respondent's proposed settled statement of the oral proceedings of the case, summarizing the witnesses' testimony.

[4]    A real estate agent testified that the fair market value of respondent's apartment was $1,800 per month.  Respondent paid $750 per month.

2

approved the number of occupants. In addition, appellant repeatedly demanded that respondent allow entry to her apartment for unneeded repairs and then failed to send a repair person. In June and August 2011, appellant served respondent with notices to quit for her alleged refusal to allow access for repairs, although no repairs were needed and no one came to make repairs. In September 2011, appellant served respondent with a notice to quit for the alleged failure to pay rent, even though she had paid it.

In August 2011, appellant sued respondent for unlawful detainer, demanding that respondent give him access to her apartment. However, in October 2011, there was a fire in a different apartment at the property. Appellant notified respondent that the utilities at the building were being discontinued for an indefinite time due to fire damage and advised her to seek shelter with the Red Cross.

Felipe Hernandez, a code enforcement officer with the Los Angeles Housing Department (housing department) inspected the property after the fire and told appellant to restore the gas and water to respondent's apartment, but appellant refused. Hernandez testified that there was nothing wrong with the property that required the utilities to remain off. On October 18, 2011, a housing department inspector posted a two-day notice to restore the utilities to respondent's apartment. Appellant claimed he had been ordered not to turn on the utilities. However, Hernandez checked with the Los Angeles Fire Department, the Los Angeles Department of Building and Safety, and appellant's insurance company, and none of those entities had instructed appellant to keep the utilities off. Because appellant refused to turn on the utilities, the housing department issued a Notice to Vacate Substandard Building, ordering appellant to evict respondent and pay her relocation fees.

3

Respondent moved out of the building from approximately October 14, 2011 through the end of November 2011, paying $3,600 for housing in a neighborhood she felt was dangerous. She had not wanted to move out of her apartment because she had strong ties to the community there. Respondent was 77 years old at the time of trial and on a fixed income and thus had limited resources to obtain housing in a safer neighborhood.

Respondent's attorney advised respondent to settle the unlawful detainer case so that she would not need to return to an apartment with no utilities, and thereafter sue appellant for constructive eviction. On November 9, 2011, appellant and respondent settled the unlawful detainer action by a superior court form, "Unlawful Detainer Stipulation and Judgment." Respondent's attorney informed appellant's attorney that respondent planned to sue appellant for constructive eviction and refused to waive her right to do so. Pursuant to the agreement, respondent agreed to vacate the apartment by November 30, 2011, and appellant agreed to pay respondent the $17,000 relocation fee ordered by the housing department. The agreement provided that judgment would be entered in favor of appellant only if respondent failed to vacate the premises. Appellant agreed that if respondent vacated the premises, he would dismiss the action with prejudice. Respondent vacated the premises pursuant to the agreement, and the action was dismissed.

In February 2012, respondent filed a complaint against appellant alleging five causes of action: breach of the warranty of habitability, constructive eviction, negligent maintenance of the premises, violation of section 789.3, and intentional infliction of emotional distress. The trial court overruled appellant's demurrer to the complaint and sustained respondent's demurrer to appellant's cross-complaint.

4

The court denied appellant's summary judgment motion, and the case proceeded to a jury trial.

The jury returned a special verdict in favor of respondent on her section 789.3 claim and her constructive eviction claim.[5] The jury found that appellant had willfully caused respondent's gas and water to remain off for the purpose of terminating her occupancy and that he constructively evicted her. The jury awarded respondent damages in the amount of $154,500. The trial court entered judgment in respondent's favor, awarding her $154,500 in damages, $2,305.35 in costs, and $106,924 in attorney fees. Appellant timely appealed.

## DISCUSSION

Appellant raises several arguments, none of which are meritorious.[6]

---

[5] As to respondent's intentional infliction of emotional distress claim, the jury found that appellant's conduct was outrageous but he did not intend to cause her emotional distress. Respondent's claims of the breach of the warranty of habitability and negligent maintenance of the premises apparently were not sent to the jury because there are no jury instructions or verdicts on those claims.

[6] Respondent has moved to dismiss the appeal pursuant to the disentitlement doctrine. Under this discretionary doctrine, "[a]n appellate court may dismiss an appeal where the appellant has willfully disobeyed the lower court's orders or engaged in obstructive tactics. [Citation.] [¶] The disentitlement doctrine has been applied to a wide range of cases, including cases in which an appellant is a judgment debtor who has frustrated or obstructed legitimate efforts to enforce a judgment. [Citations.]" (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757-758.) Respondent's motion is based on allegations of appellant's post-judgment efforts to prevent her from collecting on the judgment, such as by transferring the apartment building to his daughter without consideration. We decline, however, to exercise our discretion to engage in the fact-finding needed to apply the disentitlement doctrine and therefore deny respondent's motion to dismiss.

5

1. *The Unlawful Detainer Settlement Agreement Does Not Bar Respondent's Constructive Eviction Claim*

Appellant contends that the settlement agreement in his unlawful detainer action should have acted as res judicata against respondent's constructive eviction claim. Respondent contends that appellant has forfeited the defense of res judicata by failing to raise it in the trial court. (See *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1526 [res judicata is an affirmative defense that is forfeited if not raised and proven in the trial court]; *In re Reno* (2012) 55 Cal.4th 428, 506 [same].) Respondent is incorrect. Although appellant did not raise res judicata in his answer to the complaint, he did assert res judicata in his demurrer, as well as in his summary judgment motion. Nonetheless, appellant's res judicata claim is unmeritorious because respondent's constructive eviction claim was not argued and decided in the unlawful detainer action. (See *Landeros v. Pankey* (1995) 39 Cal.App.4th 1167, 1171 [unlawful detainer action resolved by stipulated judgment had no collateral estoppel effect as to breach of warranty of habitability claim that was not litigated and determined in the prior action] (*Landeros*).)

"The tenets of res judicata prescribe the preclusive effect of a prior final judgment on the merits. [Citation.] The doctrine has two distinct aspects: claim preclusion and issue preclusion. [Citation.] Claim preclusion, often referred to as res judicata, provides that 'a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit.' [Citation.] Issue preclusion, or collateral estoppel, '"precludes relitigation of issues argued and decided in prior proceedings."' [Citation.]" (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 227-228.) "The party asserting collateral estoppel has the burden to show from the record of

6

the prior action that the asserted issue was previously litigated and determined. [Citation.]" (*Landeros*, *supra*, 39 Cal.App.4th at p. 1171.)

The unlawful detainer statutory scheme "is intended and designed to provide an expeditious remedy for the recovery of possession of real property. [Citation.] Unlawful detainer actions are, accordingly, of limited scope, generally dealing only with the issue of right to possession and not other claims between the parties, even if related to the property. [Citation.]" (*Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297 (*Larson*); see also *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 385 ["In unlawful detainer proceedings, ordinarily the only triable issue is the right to possession of the disputed premises, along with incidental damages resulting from the unlawful detention. [Citations.]"].)

Because of the limited scope of an unlawful detainer action, "a judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations], or to adjudicate other legal and equitable claims between the parties [citations]." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255; *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973 [judgment arising from unlawful detainer action is given limited res judicata effect]; *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371 ["an unlawful detainer judgment has limited res judicata force because it typically follows a summary proceeding focused only on deciding a party's right to immediate possession of property"].)

Appellant contends that respondent forfeited her right to sue him, citing language from a box checked on the superior court form that states, "Defendant(s) [*sic*] rights under lease or rental agreement are forfeited." As stated above, unlawful detainer actions are limited in scope, generally addressing only the right

to immediate possession of the premises, not other claims between the parties, even those related to the property. (*Larson*, *supra*, 192 Cal.App.4th at p. 1297.) This pro forma language on the superior court form does not constitute a forfeiture of respondent's other claims against appellant. The settlement agreement provided that respondent agreed to waive her right to "additional relocation fees above what she receives in this agreement," but she did not agree to waive any other claims. The attorney who represented respondent in the unlawful detainer proceeding testified at trial that he specifically told appellant's attorney that respondent planned to sue appellant for constructive eviction and refused to waive her right to do so.

The settlement agreement in appellant's unlawful detainer action provided that respondent would move out of the apartment and appellant would pay the relocation fees ordered by the housing department. The agreement did not address any issues other than appellant's right to possession and respondent's right to relocation fees.

The stipulation "made no mention of a relinquishment by [respondent] of claims arising from a [constructive] eviction." (*Pelletier v. Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1557.) Her claims accordingly were "not fully and fairly litigated in an adversary hearing, and thus [were] not conclusively established. [Citation.]" (*Ibid.* [stipulated judgment in unlawful detainer proceeding did not have collateral estoppel effect on retaliatory eviction claim]; *Landeros*, *supra*, 39 Cal.App.4th at p. 1171 [stipulated judgment in unlawful detainer proceeding that contained "no language of comprehensive settlement of all matters between the parties arising from the lease" did not bar breach of

8

warranty of habitability claim].)  Res judicata accordingly does not bar respondent's constructive eviction claim.[7]

2.  *The Evidence is Sufficient to Support the Jury's Award of Damages and the Finding That Appellant Caused the Interruption of Utilities in Respondent's Apartment*[8]

Appellant's second argument is that the jury award is "constitutionally excessive" because he did not deprive respondent of utilities.  In essence, this contention is a challenge to the jury's finding that appellant willfully caused respondent's utilities to remain off.  Appellant's fifth argument is that the evidence does not support the findings that he constructively evicted respondent and violated section 789.3.  We conclude that the evidence supports the jury's findings, including the amount of damages awarded.

"""When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins and ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'""  [Citation.]  '[W]e

---

[7]  Appellant raises various other claims related to his res judicata argument.  He contends that respondent entered into the settlement agreement in bad faith; respondent's action was a SLAPP (strategic lawsuit against public participation) action (Code Civ. Proc., § 425.16; *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 280); and that the trial court lacked jurisdiction to consider respondent's claim because of the unlawful detainer settlement.  Appellant did not raise these claims in the trial court and thus has forfeited them. (See *Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733, 740 [argument not litigated in trial court was forfeited on appeal].)

[8]  Appellant's second argument, that the jury award is excessive because he did not deprive respondent of her utilities, is essentially the same as his fifth argument that the evidence is insufficient to support the jury's findings that he constructively evicted her and violated section 789.3.  We therefore discuss these arguments together.

9

presume that the record contains evidence to sustain every finding of fact. [Citation.] It is the appellant's burden to demonstrate that it does not.' [Citation.]" (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 43.) "We must 'view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .' [Citation.]" (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.)

"'A constructive eviction occurs when the acts or omissions . . . of a landlord, or any disturbance or interference with the tenant's possession by the landlord, renders the premises, or a substantial portion thereof, unfit for the purposes for which they were leased, or has the effect of depriving the tenant for a substantial period of time of the beneficial enjoyment or use of the premises.' [Citations.]" (*Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 925-926; see *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1300 ["""[A]ny disturbance of the tenant's possession by the lessor or at his procurement . . . which has the effect of depriving the tenant of the beneficial enjoyment of the premises, amounts to a constructive eviction, provided the tenant vacates the premises within a reasonable time. [Citations.]" [Citations.]'"].)

Section 789.3 prohibits a landlord from willfully causing the interruption of utilities to a tenant with the intent to terminate the tenant's occupancy. (§ 789.3, subd. (a).) A landlord who violates this section is liable for the tenant's actual damages, up to "one hundred dollars ($100) for each day or part thereof the landlord remains in violation of this section," but not less than $250, plus attorney fees. (*Id.*, subd. (c)(2).)

The jury's findings that appellant willfully deprived respondent's apartment of utilities and that he constructively evicted her are supported by substantial

evidence.  After the fire in October 2011, appellant turned off the water and gas to respondent's apartment, told her the utilities would be "unavailable for an indefinite period," and suggested she "seek shelter with the Red Cross."  Appellant refused to restore the utilities despite being ordered to do so by Hernandez, the code enforcement officer with the housing department.  Hernandez testified that, if there had been a problem with the property that required the utilities to remain off, the city would have made the repair, but no repairs were needed.  Appellant continued to refuse to restore the utilities after a housing department inspector posted a two-day notice to restore them.  Los Angeles Fire Department battalion chief Timothy Kerbrat testified that the Los Angeles Fire Department did not order appellant to turn off the water or the gas at respondent's apartment and that the fire department would not order a property owner to leave the water and gas off for six weeks.  Nor had the Los Angeles Department of Building and Safety or appellant's insurance company told appellant to keep the utilities off.

Respondent testified about appellant's attempts to force her to move out of her apartment by accusing her falsely of refusing to allow entry for repairs and of failing to pay her rent.  Respondent's son, Thomas Patton, corroborated respondent's testimony that appellant repeatedly sent her notices that he was coming to make repairs to her apartment when no repairs were needed, and that he would not show up.  He further testified that appellant told him that if respondent refused to sign a new rental agreement, "he would 'get her M.F. ass out of there.'"  Patton also testified that he called the Department of Water and Power and the gas company to have the utilities turned on, but the agencies told him they had not turned off the utilities.

The evidence supports the jury's findings that appellant deprived respondent of utility services with the intent to terminate her occupancy and that, in doing so,

11

he constructively evicted her by rendering the premises unfit and depriving her of the use of the premises.

The jury's award of damages also is supported by substantial evidence. The jury received instructions on economic, noneconomic, and statutory damages, and it awarded respondent $2000 in economic damages and $1500 in statutory damages on her section 789.3 claim. As to her constructive eviction claim, the jury was instructed to determine respondent's monthly loss as the difference between her rent and the fair market value of the apartment, multiplied by the number of months she would have remained in the apartment absent the constructive eviction. The jury also was instructed that, according to Social Security Online, the average life expectancy of a 76-year-old woman was 12 years. The difference between respondent's rent and the fair market value of her apartment was $1050 per month, which, over 10 years, would result in damages of $126,000. The jury awarded respondent $23,000 in past economic damages, $8,000 in past non-economic damages, and $120,000 in future economic damages on her constructive eviction claim. The jury's award was not excessive.

### 3. *The Jury's Findings Are Not Inconsistent*[9]

Appellant's fourth argument is that the jury's findings are inconsistent. His first contention is that the jury awarded respondent $154,500, but the trial court entered judgment in the amount of $263,729.35. The trial court's award reflects costs of $2,305.35 and $106,924 in attorney fees.

---

[9] We need not address appellant's third argument, that he did not breach the warranty of habitability or negligently maintain the premises. As noted above, these two claims were not sent to the jury. There are no jury instructions or verdict on the claims and therefore no findings or judgment to challenge.

Appellant further contends that the jury's finding that he violated section 789.3 is inconsistent with its finding that he did not intentionally cause respondent emotional distress. The jury found that, although appellant's conduct toward respondent was outrageous, he did not intend to cause her emotional distress. Appellant contends that this finding is inconsistent with the finding that he willfully caused respondent's gas and water to remain off for the purpose of terminating her occupancy of the apartment. We reject his argument for two reasons.

First, appellant did not raise this issue in the trial court and accordingly has forfeited it. (See *Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 299 [if a verdict is merely ambiguous, "a party's failure to seek clarification of the verdict before the jury is discharged may work a forfeiture of the purported defect on appeal"].) Even if not forfeited, appellant is incorrect.

The jury's finding that appellant violated section 789.3 merely requires a finding that appellant intended to terminate respondent's occupancy of her apartment. Whether appellant intended to cause respondent emotional distress is a different question from whether respondent intended to terminate respondent's occupancy of her apartment. Appellant may have intended to terminate respondent's occupancy of the apartment for reasons other than to cause respondent emotional distress, such as for financial gain. The jury's finding that appellant intended to terminate respondent's occupancy of her apartment accordingly is not inconsistent with its finding that appellant did not intend to cause respondent emotional distress.

13

4. *The Trial Court Did Not Abuse its Discretion in Awarding Respondent Attorney Fees*[10]

Appellant contends that the trial court's award of $106,924 in attorney fees is excessive and that respondent is not entitled to attorney fees because he did not violate section 789.3.[11] "'We review the amount of attorney fees awarded for abuse of discretion. [Citation.] A trial court's attorney fee award will not be set aside "absent a showing that it is manifestly excessive in the circumstances." [Citation.]' [Citation.]" (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 487 (*Lunada Biomedical*).)

Appellant did not oppose respondent's motion for attorney fees. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court forfeits the claim on appeal." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564; see also *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 494 [failure to raise objections about unnecessary attorney fees in the trial court waives the issue on appeal].) Because appellant did not challenge respondent's motion for attorney fees in the trial court, he has forfeited the issue.

---

[10] The attorney fee award is the subject of the appeal in No. B254891, although appellant also raises it in No. B252583.

[11] As discussed above, the jury's finding that appellant violated section 789.3 is supported by substantial evidence. Appellant's argument based on this contention accordingly is not discussed here.

14

Appellant relies on *Hale v. Morgan* (1978) 22 Cal.3d 388 (*Hale*) to argue that he may challenge attorney fees for the first time on appeal, but *Hale* is distinguishable. The issue in *Hale* was the constitutionality of section 789.3, an issue raised in an oblique manner in the trial court in that case. The California Supreme Court reasoned that, although a constitutional question generally is waived if not raised at the earliest opportunity, the defendant's argument that the imposition of substantial penalties under section 789.3 was "a 'great injustice'" sufficed to raise the constitutional challenge below. (*Id.* at p. 394.) *Hale* therefore does not support the proposition that the *amount* of attorney fees awarded pursuant to section 789.3 may be raised for the first time on appeal.

Even if not forfeited, appellant's challenge to the amount of attorney fees would fail. "In awarding attorney fees, the court has broad discretion to determine the reasonableness of the fees claimed in light of a number of factors, including the nature of the litigation, its difficulty, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances. [Citation.] 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong."' [Citations.]" (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 873.)

Respondent submitted detailed billing sheets and declarations in support of the motion for attorney fees. Appellant argues that the motion does not specify work rendered by support staff, but the billing sheets and declarations indicate that the work was performed by the attorneys and two associates. Appellant's general argument that the fees are unconscionable is not sufficient to establish that the trial court abused its discretion. Appellant thus has failed to establish that the award

15

was "'"manifestly excessive in the circumstances." [Citation.]' [Citation.]" (*Lunada Biomedical*, *supra*, 230 Cal.App.4th at p. 487.)[12]

### 5. *Appellant Was Not Denied the Right to Present Evidence*

Appellant contends that he was denied the right to present evidence, citing respondent's objection to exhibits appellant sought to introduce, which was based on appellant's failure to produce those documents during discovery. According to respondent's objections, she requested from appellant any documents related to repairs of the property after the fire and communications with the fire department related to utility service at the property, but appellant replied to both these requests, "None." Nonetheless, appellant sought to introduce as exhibits numerous documents that were responsive to the discovery exhibits, prompting respondent's objections.

Appellant cites former Code of Civil Procedure section 2031 to contend that respondent should have filed a motion to compel further responses instead of filing objections to his defense exhibits. However, given that appellant responded that he did not have any responsive documents, there was no basis to make a motion to compel.

Appellant also cites respondent's motion in limine to preclude evidence on his cross-complaint for breach of contract, which was based on the court's having sustained her demurrer to the cross-complaint. He cites former Code of Civil

---

[12] Appellant also purports to move to quash service of process, arguing that he was not properly served with respondent's motion for attorney fees, citing Code of Civil Procedure sections 1010 and 1005, subdivision (b). However, the statutory sections he cites do not support his contention. Code of Civil Procedure section 1010 merely sets forth general requirements regarding service, and section 1005 does not address a motion for attorney fees. Moreover, he did not raise this issue in the trial court.

Procedure section 2023, which addressed sanctions for discovery misuse. However, there is no indication in the record that the court granted the motion in limine as a discovery sanction.[13] Appellant does not explain how the court's rulings denied him of the right to present evidence, and he does not provide any other citations to the record that would support his claim.

## DISPOSITION[14]

The judgment is affirmed. Respondent shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.


We concur:


MANELLA, J.                    COLLINS, J.

---

[13]     Appellant relies on *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, which upheld the entry of default judgment as a sanction for the plaintiff's willful failure to attend two properly noticed depositions. That case involved the imposition of discovery sanctions, which did not occur here, and therefore is inapposite.

[14]     Appellant has filed numerous requests for judicial notice. His requests are denied.