Filed 8/17/15  Privato Security Co. v. Sidman CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PRIVATO SECURITY, LLC,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>GEORGE SIDMAN,<br><br>　　　Defendant and Appellant. | H040385<br>(Monterey County<br>Super. Ct. No. M123260) |

## I.  INTRODUCTION

Appellant George Sidman founded a company called WebLOQ, Inc. (WebLOQ). Sidman was chair of the WebLOQ board of directors (Board) before he resigned and entered into a settlement agreement with WebLOQ in 2011.  WebLOQ ceased operations in 2012 and its assets were assigned to a new company, Privato Security, LLC (Privato). Privato subsequently filed an action against Sidman alleging that Sidman was liable for breach of his settlement agreement with WebLOQ.  Privato's complaint included causes of action for libel, breach of contract, unfair competition, and injunctive and declaratory relief.

Sidman responded to the complaint by bringing a special motion to strike under Code of Civil Procedure section 425.16,[1] the anti-SLAPP[2] statute, which provides that a

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

cause of action arising from constitutionally protected speech or petitioning activity is subject to a special motion to strike unless the plaintiff establishes a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) The trial court granted Sidman's anti-SLAPP motion as to the cause of action for libel and denied the motion as to the other causes of action.

On appeal, Sidman contends that the trial court erred in denying his anti-SLAPP motion as to the remaining causes of action because the causes of action for breach of contract, unfair competition, and injunctive and declaratory relief all arise from prelitigation communications that are protected under section 425.16, and because Privato has not shown a probability of prevailing on those causes of action. For the reasons stated below, we agree and therefore we will reverse the trial court's order and direct the court to enter a new order granting Sidman's anti-SLAPP motion as to all four causes of action in Privato's complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *WebLOQ*

This action arises from disputes between the founder and former officers of WebLOQ, including Sidman, Gerald Williams, and Neal R. Smith, that occurred prior to the company's dissolution in 2012.

Sidman founded WebLOQ in 2003. Sidman also served as Chairman of WebLOQ's Board and was involved in the development of WebLOQ's email encryption technology. Smith was WebLOQ's president, chief executive officer (CEO), and a member of the Board. Williams served as WebLOQ's chief financial officer (CFO) and corporate secretary.

---

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

Dr. David Milligan was appointed to the WebLOQ Board in 2007. By 2009, WebLOQ was in financial distress and Dr. Milligan began investing his own funds in the company. The Board approved several agreements and a promissory note that resulted in Dr. Milligan's investments becoming loans that were secured on all of WebLOQ's assets. Dr. Milligan's loans to WebLOQ ultimately totaled more than $2 million. Dr. Milligan was appointed Chairman of the Board in February 2011.

WebLOQ was unable to improve its financial situation by either finding a buyer or attracting an investor. Smith, as president and CEO of WebLOQ, sent a letter to shareholders in December 2011 advising them that it was no longer feasible for WebLOQ to continue operations. The December 2011 letter also informed shareholders that Dr. Milligan was intending to foreclose on WebLOQ's assets as a secured creditor. Smith sent a follow-up letter to shareholders in February 2012 in which he stated that Dr. Milligan's foreclosure of WebLOQ's assets had been completed. Smith also requested shareholder approval of the dissolution of WebLOQ.

The WebLOQ assets acquired by Dr. Milligan through foreclosure included the trademark "Privato" and a WebLOQ subsidiary named Privato Security, Inc. In January 2012, Dr. Milligan assigned the former WebLOQ assets to a new entity, Privato, LLC, which he had created for that purpose. At present, Dr. Milligan is the sole owner of Privato, Smith is Privato's CEO, and Williams is Privato's CFO.

**B** *The Settlement Agreement*

In 2010, Sidman became concerned that Smith and Williams had authorized payments for paid time off (PTO) for each other, although WebLOQ had laid off staff and closed an office due to its financial difficulties. Sidman informed the Board about the PTO payments to Smith and Williams and sought to establish a company policy prohibiting such payments.

In the meantime, Smith had become concerned that there was tension between Sidman and the Board, "primarily centered around unprofessional and often erratic

3

behavior routinely being exhibited by Sidman in the workplace." According to Smith, Sidman's "inappropriate behavior ultimately resulted in the Board of Directors requiring that Mr. Sidman physically remove himself from the WebLOQ headquarters."

Sidman resigned from WebLOQ in April 2011. On July 1, 2011, Sidman and WebLOQ entered into a settlement agreement and release in which Sidman received a lump sum severance payment of $67,500 in exchange for a release of claims and agreement to several other express terms.

Pertinent here, paragraph 11 of the settlement agreement provides in part: "[Sidman] agrees that he shall not directly or indirectly (i) make, or cause, assist, facilitate or otherwise influence others . . . to make, any negative or disparaging statements regarding [WebLOQ], its products, services or technologies, or its past or present officers, directors, employees, agents, affiliates, stockholders, investors, representatives, customers, partners or suppliers or (ii) act, or cause, assist, facilitate or otherwise influence others to act, in any other manner that would damage or interfere with [WebLOQ's] business, including its contracts and relationships with its customers, vendors or partners."

## C. *Sidman's Post-Settlement Agreement Communications*

After WebLOQ ceased operations and its assets were transferred to Privato in January 2012, Sidman started communicating with former WebLOQ shareholders. Sidman sent a five-page "Letter to WebLOQ Shareholders" dated March 14, 2013, that began: "I am sending you this letter because I feel a deep and continuing obligation to the investors and other stakeholders whose money and other contributions made WebLOQ a reality. When WebLOQ was closed in early 2012 it had already become apparent to a few shareholders that what the company leaders were telling the stockholders masked the true story. This letter is to inform you of the chain of events and activities that shifted all WebLOQ assets into an alter-ego company, and resulted in the loss of your investment when they closed the WebLOQ corporation. [¶] You will learn

4

of the premeditated actions by the company's officers and directors that we believe violated their corporate fiduciary obligations; and be offered an opportunity to help set the stage for appropriate legal action on behalf of the shareholders."

The March 14, 2013 letter went on to state, among other things, that "[i]n this case, a minority investor imposed harsh loan terms on the company and then named himself company Chairman while sitting on both sides of the table. His secured convertible notes positioned him to simply foreclose at will and seize all assets; which he did with a flagrant disregard for the priority rights of the other stockholders whose total investments were two times larger than his inflated debt. He and his two accomplices deftly sequestered the company's assets and then shut down the corporation, while paying for and continuing the WebLOQ shadow operations–to which they later rolled directly into their successor company. [¶] Like all other investors, he could and should have purchased stock in WebLOQ, rather than imposing his self-dealing loans. . . [¶] . . . Instead, he and the company CEO and CFO, in clear violation of Delaware law, placed their personal interests ahead of all others and manipulated the circumstances to crush the WebLOQ shareholders and take all the marbles."

The March 14, 2013 letter also concerned potential litigation, as follows: "We are now gathering all the documents and other evidence to prepare our case. This case preparation stage is crucial to determining next steps and the most appropriate type of legal action. We believe there may be additional supporting information in the hands of stockholders that would be helpful. . . . As this case comes together we may be seeking approvals from WebLOQ shareholders and others to join the action as plaintiffs."

Sidman sent a second letter to WebLOQ shareholders, dated April 16, 2013. Sidman's second letter addressed a letter sent to WebLOQ's former shareholders by Dr. Milligan's attorneys that responded to Sidman's earlier letter of March 14, 2013. Among other things, Sidman stated in his April 16, 2013 letter that "[m]y letter to you of March 14[th] simply chronicled WebLOQ documents sent to shareholders, along with

5

publicly available information regarding Privato. Those documents and the resulting timeline revealed the secrecy of their actions and the breach of their fiduciary obligations." The April 16, 2013 letter concluded: "We are proceeding with case preparation and anticipate filing in the Federal Court in Delaware. For those who have indicated an interest in participating as plaintiffs, I will be in touch personally."

In addition, Sidman started a public website named "WebLOQ Shareholder Information & Documents" with a webpage that included the following statement: "How $5 million of WebLOQ shareholder investment, along with all company assets and patentable technology, were transferred into Privato Security LLC; a company that is owned privately by three former WebLOQ officers and directors, and was created by them many months before they closed WebLOQ. [¶] . . . It is in support of case preparation for appropriate legal action on behalf of the shareholders and others."

D. *The Complaint*

The complaint filed in May 2013 by plaintiffs Privato, Smith, and Williams against defendant Sidman asserted causes of action for libel, breach of contract, unfair competition (Bus. & Prof., Code, § 17200 et seq.), and injunctive and declaratory relief, and sought compensatory and punitive damages.

In the libel cause of action, plaintiffs Privato, Smith and Williams alleged that Sidman's two letters to WebLOQ's shareholders, dated March 14, 2013, and April 16, 2013, were false and defamatory because the letters accused plaintiffs of dishonesty and crimes in their occupations and business.

The other causes of action were brought only by plaintiff Privato. The cause of action for breach of contract alleged that Sidman had violated the terms of the settlement agreement that (1) prohibited him from influencing the actions of WebLOQ shareholders; (2) prohibited him from making negative or disparaging statements about WebLOQ and its officers and directors; (3) required him to maintain the confidentiality of the

6

settlement agreement; and (4) obligated him to indemnify and hold plaintiffs harmless under certain circumstances.

The causes of action for unfair competition and injunctive and declaratory relief alleged that Sidman was liable for sending letters to shareholders and publishing on a public website "inflammatory statements, misstatements and false accusations about Privato, its owner, officers and managers," as well as holding meetings in which Sidman sought to "negatively influence" former shareholders and potential customers.

### E.  *Sidman's Section 425.16 Motion*

After answering the complaint, Sidman filed a special motion to strike the complaint under section 425.16.  In support of his anti-SLAPP motion, Sidman contended that the lawsuit was a SLAPP because all causes of action arose from his prelitigation communications that were protected under section 425.16, subdivision (e)(2).

Specifically, Sidman argued that the causes of action for libel, breach of contract, unfair competition, and injunctive relief were all based on the statements he made in the two letters to WebLOQ shareholders and on his public website, which related to potential claims for breach of fiduciary duty and the litigation that Sidman anticipated.  Sidman also argued that each cause of action failed on the merits.

In opposition to the anti-SLAPP motion, plaintiffs asserted that the "heart" of their complaint was not protected speech, but was instead a controversy about the scope and enforceability of the settlement agreement.  Plaintiffs argued that Sidman's "inflammatory statements" in his two letters and on the public website alerted them to the existence of a dispute regarding the terms of the settlement agreement that prohibited Sidman from making disparaging comments regard WebLOQ and its past or present officers, directors, or employees.  Plaintiffs also argued that they could demonstrate a probability of prevailing on each of their claims.

7

**F.** *The Trial Court's Order*

In its order of September 4, 2013, the trial court granted Sidman's anti-SLAPP motion in part and denied it in part. The court granted the motion as to the cause of action for libel, finding that the claim was based upon protected speech because the statements in Sidman's letters were made in anticipation of litigation and were therefore protected under section 425.16, subdivision (e)(2). The court also determined that plaintiffs could not demonstrate a probability of prevailing on their libel claim because the allegedly libelous statements were inadmissible pursuant to the Civil Code section 47, subdivision (b) litigation privilege.

The trial court denied the anti-SLAPP motion as to the causes of action for breach of contract, unfair competition, and injunctive and declaratory relief, finding that those causes of action did not arise from activities protected under section 425.16. The court determined that "the actual dispute between the parties is to the validity of the [settlement agreement] provisions and the parties' rights and obligations under the [settlement agreement]." Citing *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, the court also found that with regard to those causes of action, Sidman's speech or petitioning activity was " 'mere *evidence* related to liability,' not the basis for liability itself. [Citation.]"

### III. DISCUSSION

Sidman filed a timely notice of appeal from the trial court's order. An order granting or denying a special motion to strike under section 425.16 is immediately appealable. (§ 425.16, subd. (i); § 904.1, subd. (a)(13); *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371.)

On appeal, Sidman reiterates his contentions that the trial court erred in denying his anti-SLAPP motion because the causes of action for breach of contract, unfair competition, and declaratory and injunctive relief all arise from activity that is protected under section 425.16, and because plaintiffs do not have a probability of prevailing on

8

their claims.[3]  We will begin our evaluation of defendants' contentions with an overview of section 425.16, the anti-SLAPP statute, followed by a discussion of the applicable standard of review.

### A.  *Section 425.16*

Section 425.16 was enacted in 1992 in response to a "disturbing increase" in lawsuits brought for the strategic purpose of chilling a defendant's rights of petition and free speech.  (§ 425.16, subd. (a).)[4]  SLAPPs are unsubstantiated lawsuits based on claims arising from defendant's constitutionally protected speech or petitioning activity.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 60; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

Section 425.16 applies to any cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ."  (§ 425.16, subds. (b)(1), (e)(4).)  The stated purpose of section 425.16 is to encourage protected speech by permitting a court to promptly dismiss unmeritorious actions or claims that are brought "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."

---

[3] We deny Sidman's request for judicial notice filed May 20, 2014, of his cross-complaint filed-stamped March 18, 2014, which was not before the trial court at the time of the September 4, 2013 order that is the subject of this appeal.  "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]"  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

[4] Section 425.16, subdivision (a) provides:  "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed broadly."

9

(§ 425.16, subd. (a); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278 (*Soukup*).)

Under section 425.16, the trial court evaluates the merits of a possible SLAPP by "using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) The procedures authorized in the statute allow a defendant to stay discovery before litigation costs mount, obtain early dismissal of the lawsuit, and recover attorney's fees. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 197-198.)

A defendant seeking the protection of the anti-SLAPP statute has the burden of making the initial showing that the lawsuit arises from conduct "in furtherance of [a] person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subds. (b)(1), (e)(4); *Navellier*, *supra*, 29 Cal.4th at pp. 87-88.) Once the defendant has shown that the plaintiff's claim arises from one of the section 425.16, subdivision (e) categories of protected activity, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Navellier*, *supra*, at p. 88.)

Thus, " '[s]ection 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at pp. 278-279.)

10

**B.** *The Standard of Review*

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.)

Applying this standard of review, we will independently determine from our review of the record whether any of the three remaining causes of action constitutes a SLAPP under section 425.16. We will begin by addressing the cause of action for breach of contract.

**C.** *Breach of Contract*

**1. Protected Activity**

We first consider whether Sidman met his burden to make the threshold showing that Privato's breach of contract claim arises from one of the section 425.16, subdivision (e) categories of protected activity. (§ 425.16, subd. (b)(1); *Navellier*, *supra*, 29 Cal.4th at p. 88.) Sidman contends that Privato's breach of contract claim is a SLAPP because it is based on protected activity under section 425.16, subdivision (e)(2), consisting of the two letters he sent to WebLOQ shareholders in anticipation of litigation.

Privato argues to contrary that its breach of contract claim arises from the various provisions of the settlement agreement that Sidman allegedly violated, and therefore the claim is based upon a dispute regarding the enforceability and scope of the parties' settlement agreement, not protected activity.

The California Supreme Court has stated the standard for determining whether the defendant's acts, as alleged in the complaint, constitute activity protected under section 425.16, subdivision (e). "[T]he statutory phrase 'cause of action . . . arising from'

11

means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).)

Section 425.16, subdivision (e) provides in pertinent part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

Since "[t]he filing of lawsuits is an aspect of the First Amendment right of petition" (*Soukup*, *supra*, 39 Cal.4th at p. 291), a claim based on actions taken in connection with litigation fall "squarely within the ambit of the anti-SLAPP statute's 'arising from' prong. (§ 425.16, subd. (b)(1))." (*Navellier*, *supra*, 29 Cal.4th at p. 90, fn. omitted.) "Thus, statements, writings, and pleadings in connection with civil litigation or in contemplation of civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citation.]" (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 472 (*Lunada*).)

In the present case, Privato alleges in its complaint that Sidman breached several provisions of the settlement agreement "by repeatedly sending letters to shareholders and

12

publishing on a public website inflammatory statements, misstatements and accusations about the WebLOQ's successor, Privato, its officers, employees and its managers; by further taking steps to threaten litigation against Plaintiffs; making misrepresentations concerning Plaintiffs in order to interfere with Privato's business and negatively influence potential investors, potential clients/customers, management and other interested parties; and by holding meetings and conferences in order to negatively influence former shareholders, potential clients/customers, potential investors, management and other interested parties in violation of his legal duties and the Settlement Agreement, all done in order to gain an unfair business advantage over Plaintiff, its' owner, member and managers."

We determine that the cause of action for breach of contract alleges activity protected under section 425.16, subdivision (e)(2). Sidman's two letters to shareholders and his public website contained statements clearly made in anticipation of litigation. For example, the March 14, 2013 letter stated: "We are now gathering all the documents and other evidence to prepare our case. This case preparation stage is crucial to determining next steps and the most appropriate type of legal action. We believe there may be additional supporting information in the hands of stockholders that would be helpful. . . . As this case comes together we may be seeking approvals from WebLOQ shareholders and others to join the action as plaintiffs." Similarly, the April 16, 2013 letter concluded: "We are proceeding with case preparation and anticipate filing in the Federal Court in Delaware. For those who have indicated an interest in participating as plaintiffs, I will be in touch personally." (See *Navellier*, *supra*, 29 Cal.4th at p. 90; see also *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1267-1268 [former employer's letter to customers regarding former employee's violation of agreement not to contact customers was protected under section 425.16 as communication in anticipation of litigation].)

However, the cause of action for breach of contract also alleges activity by Sidman that arguably is not protected under section 425.16, subdivision (e)(2) as actions taken in

13

connection with litigation. (See *Navellier*, *supra*, 29 Cal.4th at p. 90.) In particular, Privato alleges that Sidman breached the settlement agreement by holding meetings and making misrepresentations in order to "negatively influence" former shareholders and others.

Where, as here, a cause of action alleges both activity protected under section 425.16, subdivision (e) and unprotected activity, we apply the " 'principal thrust or gravamen' test." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 (*Club Members*).) "The 'principal thrust or gravamen' test has been used to determine whether an action fits within the scope of the anti-SLAPP protection provided by section 425.16 when a pleading contains allegations referring to both protected and unprotected activity. [Citation.]" (*Ibid.*)

Under that test, "when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) Thus, "a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.]" (*Ibid.*; *accord*, *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1219.)

Having carefully reviewed the complaint, we find that the allegations of protected activity—the statements in letters to shareholders and website statements made in anticipation of litigation—are not merely incidental to the cause of action for breach of contract. To the contrary, the "principal thrust or gravamen" of the breach of contract cause of action is Sidman's alleged activity of sending letters and creating a website for the purpose of promoting the participation of former WebLOQ shareholders in a lawsuit that Sidman intended to bring against former WebLOQ officers and directors for breach of fiduciary duty. (See *Club Members*, *supra*, 45 Cal.4th at p. 319.)

14

Since the letters and website constitute activity protected under section 425.16, subdivision (e)(2) as statements made in anticipation of litigation (*Lunada*, *supra*, 230 Cal.App.4th at p. 472), we determine that Sidman has met his burden to make a threshold showing that the breach of contract cause of action arises from speech or petitioning that is protected under the anti-SLAPP statute.  (See *Navellier*, *supra*, 29 Cal.4th at pp. 93-95 [breach of contract action alleging that the defendant breached a release of claims by filing claims in court arose from protected activity]; *D'Arrigo Bros. of California v. United Farmworkers of America* (2014) 224 Cal.App.4th 790, 799-800 [breach of contract claim alleging that defendant union breached agreement with employer arose from protected activities before the Agriculture Labor Relations Board]; *Vivian v. Laburcherie* (2013) 214 Cal.App.4th 267, 274 [breach of contract claim alleging that defendant breached a settlement agreement by making disparaging statements in family court arose from protected activity].)

Since Sidman has satisfied the first prong of the anti-SLAPP statute, we turn to consideration of the second prong:  whether Privato has met its burden to show a probability of prevailing on its breach of contract claim, since "no cause of action qualifies as a SLAPP merely because the defendant's actions conceptually fall within the ambit of the statute's initial prong."  (*Navellier*, *supra*, 29 Cal.4th at p. 95.)

## 2.  Probability of Prevailing

Sidman argues that Privato cannot show a probability of prevailing on its breach of contract claim because Privato did not sign the settlement agreement between Sidman and WebLOQ, and also because the right to enforce the settlement agreement was not transferred from WebLOQ to Privato.  Alternatively, Sidman argues that Privato has not

provided evidence that he breached the settlement agreement, since the only evidence offered in support of his alleged breach is Dr. Milligan's unsigned declaration.[5]

Privato responds that it submitted evidence of the documents that transferred WebLOQ's assets to Privato, and those documents, when read together, show that Privato is the successor in interest to WebLOQ and therefore Privato acquired the right to enforce the settlement agreement with Sidman. WebLOQ also asserts that any ambiguity in the documents regarding Privato's acquisition of the right to enforce the settlement agreement may be clarified by evidence of the parties' subjective intent.

We begin our analysis by noting that the California Supreme Court in *Navellier* ruled that the "merits prong to the statutory SLAPP definition (§ 425.16, subd. (b)(1)) . . . preserves appropriate remedies for breaches of contracts involving speech by ensuring that claims with the requisite minimal merit may proceed. [Citations.]" (*Navellier*, *supra*, 29 Cal.4th at p. 94.) In *Navellier*, the court determined that the defendant's threshold showing that the plaintiffs' breach of contract claim arose from litigation activity protected under section 425.16 was not dispositive, since the "plaintiffs may defeat the anti-SLAPP motion by establishing a probability of prevailing on their claim. [Citation.]" (*Navellier*, *supra*, 29 Cal.4th at p. 95, fn. omitted.)

"To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Soukup*, *supra*, 39 Cal.4th at p. 291.) "The showing must be made through 'competent and admissible evidence.' [Citations.] Thus, declarations that lack foundation or personal knowledge, or that are argumentative, speculative,

---

[5] We recognize that Sidman has argued on appeal that the two letters to WebLOQ shareholders and the webpage attached to the unsigned declaration of Dr. Milligan are inadmissible. For purposes of our analysis, we will assume, without deciding, that the letters and webpage are admissible evidence.

16

impermissible opinion, hearsay, or conclusory are to be disregarded.  [Citation.]"
(*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.)  " '[T]he plaintiff "cannot simply rely
on the allegations in the complaint" [citation] . . . .' [Citation.]" (*Alpha & Omega
Development, LP v. Whillock Contracting, Inc.* (2011)  200 Cal.App.4th 656, 664.)

Accordingly, Privato had the burden to make a prima facie showing of facts,
supported by admissible evidence, that is sufficient to support each element of its breach
of contract cause of action.  (See *Soukup*, *supra*, 39 Cal.4th at p. 291.)  The elements of a
cause of action for breach of contract are:  "(1) the existence of the contract,
(2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and
(4) the resulting damages to the plaintiff.  [Citation.]" (*Oasis West Realty, LLC v.
Goldman* (2011) 51 Cal.4th 811, 821.)

The issue raised in this appeal, however, is whether Privato, as a nonsignatory to
the settlement agreement between Sidman and WebLOQ, has the right to enforce the
settlement agreement.  Privato acknowledges that "there exists some ambiguity . . .
regarding whether the documents transferring WebLOQ's interests to Privato include the
[settlement agreement] among those interests transferred."  Privato further acknowledges
that although it "maintains that all [the] transfer documents, collectively, unambiguously
transfer to Privato all contract and all rights arising from any WebLOQ contract,
including the [settlement agreement], to the extent that there may be any ambiguity on
the subject, evidence reflecting the parties' subjective intent on the issue is relevant and
appropriately considered by this Court.  It should also be noted that such ambiguity may
be dispelled once the parties are allowed to commence discovery in this case."

We determine that Privato has not met its burden to establish a probability of
prevailing on its breach of contract claim in the absence of a prima facie showing that it
has the right to enforce the settlement agreement as a nonsignatory to the agreement.
(*Navellier*, *supra*, 29 Cal.4th at p. 95.)  Privato implicitly concedes that the documents
pertaining to Privato's acquisition of WebLOQ's assets do not expressly address the

17

settlement agreement between WebLOQ and Sidman.  Privato also acknowledges that the transfer documents are arguably ambiguous with respect to Privato's right to enforce the settlement agreement made between Sidman and WebLOQ.  Moreover, our review of the record shows that Privato did not submit any evidence regarding the parties' subjective intent as to whether the transfer of WebLOQ's assets to Privato included the right to enforce the settlement agreement between Sidman and WebLOQ.

Since we have determined that Sidman met his burden to make a threshold showing that Privato's breach of contract claim arose from litigation-related activity protected under section 425.16, subdivision (e)(2), and Privato failed to met its burden to show that it had a probability of prevailing on the breach of contract claim, we conclude that Sidman's anti-SLAPP motion should be granted as to the cause of action for breach of contract.  We reiterate that " '[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'  [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at pp. 278-279.)

### D.  *Unfair Competition*

Sidman contends that Privato's unfair competition cause of action is also based upon his protected activity of sending letters to WebLOQ shareholders that enlisted their support in litigation.  He also contends that Privato cannot show a probability of prevailing because the unfair competition cause of action is barred by the litigation privilege set forth in Civil Code section 47, subdivision (b) (hereafter, section 47(b)).  Alternatively, Sidman argues that Privato cannot show a probability of prevailing since he is not a business and his act of sending letters to WebLOQ shareholders does not constitute a business practice.

Privato argues that its unfair competition claim is not barred by the section 47(b) litigation privilege since the privilege is not unlimited.  Additionally, Privato argues that

18

Sidman's sending of letters to WebLOQ shareholders constitutes an unfair business practice.

### 1. Protected Activity

In its unfair competition cause of action, Privato alleges that Sidman is liable for unfair business practices under Business and Professions Code section 17200 et seq. for (1) "[r]epeatedly sending letters to shareholders and publishing on a public website inflammatory statements, misstatements and false accusations about Privato, its owner, officers and managers;" (2) "[t]hreatening litigation against Plaintiffs in order to create leverage and extort the company in an unfair manner;" (3) "[m]aking misrepresentations concerning Plaintiffs in order to interfere with the company's business and negatively influence former shareholders, potential investors/purchasers, potential clients/customers, management and other interested parties;" (4) "[h]olding meetings and conferences in order to negatively influence former shareholders, potential investors/purchasers, potential clients/customers, management and other interested parties in violation of his legal duties and obligations under the Settlement Agreement, all done in order to gain an unfair business advantage over Plaintiff, its' member and managers."

We find that the "principal thrust or gravamen" of the unfair competition cause of action, like the breach of contract cause of action, is Sidman's alleged activity of sending letters and creating a website for the purpose of obtaining the participation of former WebLOQ shareholders in a lawsuit that Sidman intended to bring against former WebLOQ officers and directors for breach of fiduciary duty. (See *Club Members*, *supra*, 45 Cal.4th at p. 319.) Having previously determined that Sidman's letters to former WebLOQ shareholders and his website constitute activity protected under section 425.16, subdivision (e)(2) as statements made in anticipation of litigation (*Lunada*, *supra*, 230 Cal.App.4th at p. 472), we similarly determine that Sidman has met his burden to make a threshold showing that the unfair competition cause of action arises from speech or petitioning that is protected under the anti-SLAPP statute. (See *Navellier*, *supra*,

19

29 Cal.4th at pp. 93-95; but see *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307-1308 [City's declaratory relief action arose from a controversy regarding the scope and enforceability of its settlement agreement with the plaintiff employee, not his protected activity].)

### 2. Probability of Prevailing

We next consider whether Privato can meet its burden to show that it has a probability of prevailing on its unfair competition claim, beginning with Sidman's contention that the claim is barred by the litigation privilege codified in section 47(b). (See *Navellier*, *supra*, 29 Cal.4th at p. 95.) "The litigation privilege is also relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing. [Citations.]" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 (*Flatley*).)

Section 47(b) provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] . . . In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . . ." " 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).)

"In its application to communications made in a 'judicial proceeding,' section 47(b) is not limited to statements made in a courtroom. Many cases have explained that section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit. [Citation.]" (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361 (*Hagberg*).) However, "[a] prelitigation communication is privileged only when it relates

20

to litigation that is contemplated in good faith and under serious consideration. [Citations.]" (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251.)

In *Rubin v. Green* (1993) 4 Cal.4th 1187 (*Rubin*), our Supreme Court addressed the issue of whether the litigation privilege of section 47(b) barred an unfair competition claim. The plaintiff in *Rubin* was a co-owner of a mobile home park, who sued a park resident and her attorneys after they sent the co-owner a letter complaining of defects in park operation and giving notice of their intention to sue him. (*Rubin, supra,* at p. 1191.) The amended complaint included an unfair competition claim alleging that the defendant attorneys had a pattern of meeting with mobile home park residents for the purpose of soliciting their participation in litigation against the park owner. (*Id*. at p. 1192.) The court determined that defendant's alleged acts came within the scope of the litigation privilege, stating that "we can imagine few communicative acts more clearly within the scope of the privilege than those alleged in the amended complaint, that is, meeting and discussing with [mobile home park] residents park conditions and the merits of the proposed failure-to-maintain lawsuit, and filing the complaint and subsequent pleadings in the litigation." (*Id*. at p. 1195.)

Having determined that the attorney defendants were protected from tort liability by the section 47(b) litigation privilege, the *Rubin* court next considered whether the defendants were also protected from liability under the unfair competition statute, Business and Professions Code section 17200. As the Supreme Court later confirmed in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163 (*Cel-Tech*), the court in *Rubin* " 'rejected the claim that a plaintiff may, in effect, "plead around" absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute.' [Citation.]

The *Cel-Tech* court further stated that in *Rubin* "[w]e found 'the conduct of defendants alleged in the complaint' came 'within the scope of [Civil Code] section 47(b),' and thus was 'absolutely immune from civil tort liability . . . . If the

21

policies underlying section 47(b) are sufficiently strong to support an absolute privilege, the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance arising from identical conduct as that protected by section 47(b).' [Citation.]" (*Cel-Tech*, *supra*, 20 Cal.4th at p. 182.) In other words, "[a] plaintiff may thus not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition.' [Citation.]" (*Ibid.*)

Our Supreme Court therefore concluded in *Rubin* that the "plaintiff's tack of pleading his claim under the unfair competition statute does not override the litigation privilege in this case . . . ." (*Rubin*, *supra*, 4 Cal.4th at p. 1204; see also *People ex. rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 958-964 [unfair competition action against lumber company alleging that company made misstatements and submitted false data in California Environment Quality Act proceedings was barred under section 47(b) litigation privilege].)

The decision in *Rubin* and as discussed in *Cel-Tech* guides our analysis here. The acts alleged in Privato's complaint come within the scope of the section 47(b) litigation privilege since, as we have discussed, the gravamen of Privato's claims against Sidman is his prelitigation communications with former WebLOQ shareholders. (See *Hagberg*, *supra*, 32 Cal.4th at p. 361; *Cel-Tech*, *supra*, 20 Cal.4th at p. 182.) Privato cannot overcome the section 47(b) litigation privilege that applies to its claims against Sidman by pleading the claims as an unfair competition cause of action. (See *Cel-Tech*, *supra*, at p. 182.) For that reason, we determine that the section 47(b) litigation privilege precludes Privato from demonstrating a probability of prevailing on its unfair competition claim (*Flatley*, *supra*, 39 Cal.4th at p. 323) and Sidman's anti-SLAPP motion should be granted as to the unfair competition cause of action.

## E. *Injunctive and Declaratory Relief*

Sidman contends that the cause of action for injunctive and declaratory relief should be stricken for the same reason that Privato's breach of contract claim fails: that Privato cannot show that it has standing to enforce the settlement agreement between Sidman and WebLOQ. Sidman also contends that Privato cannot obtain injunctive relief since injunctive relief is a remedy, not a cause of action, and Privato has not shown that it has a right to any remedy.

Privato again argues that its claims arise from the parties' dispute regarding the scope and enforceability of the settlement agreement, and not from any protected activity.

Where, as here, the subject of a special motion to strike is a cause of action for declaratory relief, the defendant must show that the actual controversy underlying the cause of action arises from protected activity within the meaning of section 425.16, subdivision (e). (*City of Cotati*, *supra*, 29 Cal.4th at pp. 78-80.)

Privato's declaratory relief cause of action repeats verbatim the allegations in its other causes of action regarding Sidman's conduct, including his letters to WebLOQ shareholders and his webpage. The declaratory relief action also alleges that "[p]laintiff has demanded that Defendant cease his actions in violation of the Settlement Agreement and to further cease from damaging and disparaging Plaintiffs and from causing . . . damage to the business affairs and reputation of Privato." We have previously determined that the gravamen of Privato's claims against Sidman is his prelitigation communications with former WebLOQ shareholders (Sidman's letters and webpage), which constitute protected activity under section 425.16, subdivision (e)(2). Sidman's anti-SLAPP motion therefore made the requisite threshold showing that the declaratory relief cause of action arises from protected activity.

To survive Sidman's anti-SLAPP motion, Privato had the burden of introducing " ' "substantial evidence that would support a judgment of [declaratory] relief made in the plaintiff's favor." [Citations.]' [Citation.]" (*Lunada*, *supra*, 230 Cal.App.4th at

23

p. 479, fn. omitted.) Privato cannot meet that burden because, as we have previously determined, its claims against Sidman are precluded by the section 47(b) litigation privilege that applies to prelitigation communications. (See *Cel-Tech*, *supra*, 20 Cal.4th at p. 182.)

We also determine that Privato cannot state a cause of action for injunctive relief. "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted. [Citation.]" (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168 (*Shell Oil*); see also *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973 [a permanent injunction is attendant to an underlying cause of action].)

As we have discussed with regard to the causes of action for breach of contract, unfair competition, and declaratory relief, Privato cannot establish a probability of prevailing on any of the causes of action asserted in its complaint. In the absence of a viable cause of action, Privato may not obtain injunctive relief. (See *Shell Oil*, *supra*, 52 Cal.App.2d at p. 168.) Therefore, Sidman's anti-SLAPP motion should be granted as to the cause of action for injunctive and declaratory relief.

## F. *Conclusion*

For the reasons stated above, we determine Sidman has made a threshold showing that the causes of action for breach of contract, unfair competition, and injunctive and declaratory relief arise from speech or petitioning activity protected under section 425.16, subdivision (e)(2) and Privato has not demonstrated a probability of prevailing on any of the causes of action. We therefore conclude that Sidman's anti-SLAPP motion should be granted as to the causes of action for breach of contract, unfair competition, and injunctive and declaratory relief. (See *Soukup*, *supra*, 39 Cal.4th at pp. 278-279.) Having reached that conclusion, we need not address Sidman's claims of evidentiary error.

24

We further conclude that the trial court erred in granting the anti-SLAPP motion only as to the cause of action for libel and in denying the motion as to the other causes of action. Therefore, we will reverse the September 4, 2013 order and direct the court to enter a new order granting the motion as to the all four causes of action in the complaint pursuant to section 425.16.

## IV.  DISPOSITION

The September 4, 2013 order granting the special motion to strike in part and denying the motion in part is reversed. The matter is remanded to the trial court with directions to enter a new order granting the motion to strike as to all four causes of action in the complaint pursuant to Code of Civil Procedure section 425.16, and to conduct proceedings as appropriate to determine costs and reasonable attorney fees, including attorney fees on appeal, to be awarded to appellant. (See *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1038.)

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MIHARA, J.

_____

MÁRQUEZ, J.